ORIGINAL FILED

AUG 16 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

EMC

1   MICHAEL A. LAURENSON (SBN: 190023)
    ADAM B. SUGARMAN (SBN: 238470)
2   GORDON & REES LLP
    Embarcadero Center West
3   275 Battery Street, Suite 2000
    San Francisco, CA 94111
4   Telephone: (415) 986-5900
    Facsimile: (415) 986-8054
5
    Attorneys for Defendant
6   THE REGENTS OF THE
    UNIVERSITY OF CALIFORNIA
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  WILLIAM O'SULLIVAN,                      Case No. **C 07 4213**

11          Plaintiff and Petitioner,        **NOTICE OF REMOVAL OF ACTION
                                             UNDER 28 U.S.C. § 1441(b) (FEDERAL**
12  vs.                                      **QUESTION)**

13  THE REGENTS OF THE UNIVERSITY OF         Request for Jury Trial
    CALIFORNIA; Does I-XX
14
            Defendants and Respondents.
15

16

17          TO THE CLERK OF THE ABOVE-ENTITLED COURT:

18          PLEASE TAKE NOTICE that defendants THE REGENTS OF THE UNIVERSITY OF

19  CALIFORNIA ("defendant") hereby removes to this Court the state court action described

20  below.

21          1.      On July 26, 2007, an action was commenced in the Superior Court of the State of

22  California in and for the County of San Francisco, entitled *William O'Sullivan, Plaintiff and*

23  *Petitioner v. The Regents of the University of California, Defendant and Respondent*, as Case

24  No. 465498. On July 27, 2007, a First Amended Complaint was filed, alleging violation of the

25  Rehabilitation Act of 1973 (29 U.S.C. §§ 794 *et seq.*), and a cause of action for Writ of

26  Administrative Mandamus and/or Mandamus Along With Damages, under the California Code

27  of Civil Procedure (CCP § § 1094.5, 1095, and 1085). Attached hereto as EXHIBT A are copies

28  of all of the pleadings on file in the state court.

*Gordon & Rees LLP*
*Embarcadero Center West*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

1   MICHAEL A. LAURENSON (SBN: 190023)
    ADAM B. SUGARMAN (SBN: 238470)
2   GORDON & REES LLP
    Embarcadero Center West
3   275 Battery Street, Suite 2000
    San Francisco, CA 94111
4   Telephone: (415) 986-5900
    Facsimile: (415) 986-8054
5
    Attorneys for Defendant
6   THE REGENTS OF THE
    UNIVERSITY OF CALIFORNIA
7
8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10  WILLIAM O'SULLIVAN,                    Case No. _____

11          Plaintiff and Petitioner,      **NOTICE OF REMOVAL OF ACTION
                                           UNDER 28 U.S.C. § 1441(b) (FEDERAL
12  vs.                                    QUESTION)**

13  THE REGENTS OF THE UNIVERSITY OF       Request for Jury Trial
    CALIFORNIA; Does I-XX
14
            Defendants and Respondents.
15

16

17          TO THE CLERK OF THE ABOVE-ENTITLED COURT:

18          PLEASE TAKE NOTICE that defendants THE REGENTS OF THE UNIVERSITY OF

19  CALIFORNIA ("defendant") hereby removes to this Court the state court action described

20  below.

21          1.      On July 26, 2007, an action was commenced in the Superior Court of the State of

22  California in and for the County of San Francisco, entitled *William O'Sullivan, Plaintiff and*

23  *Petitioner v. The Regents of the University of California, Defendant and Respondent*, as Case

24  No. 465498. On July 27, 2007, a First Amended Complaint was filed, alleging violation of the

25  Rehabilitation Act of 1973 (29 U.S.C. §§ 794 *et seq.*), and a cause of action for Writ of

26  Administrative Mandamus and/or Mandamus Along With Damages, under the California Code

27  of Civil Procedure (CCP § § 1094.5, 1095, and 1085). Attached hereto as EXHIBT A are copies

28  of all of the pleadings on file in the state court.

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

2.    Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being filed within thirty days from the date on which it was determined by defendant that the action was removable.

3.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. § 1441(b) in that it arises under the Rehabilitation Act of 1973 (29 U.S.C. §§ 794 *et seq.*). This Court has supplemental jurisdiction over plaintiff's state law claim, pursuant to 28 U.S.C. § 1367(a), as this claim arises out of the same case or controversy.

4.    Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA is the only named defendant in this action.

5.    A copy of this Notice of Removal is being filed with the Clerk of the Superior Court of the State of California in and for the County of San Francisco.

6.    A copy of this Notice of Removal is also being served on plaintiff.

Defendant requests a jury trial.

Dated: August /6, 2007

GORDON & REES LLP

By:

MICHAEL A. LAURENSON
Attorneys for Defendant
THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

2

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA  94111.  On August 16, 2007, I served the within documents:

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION)

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

Louis A. Highman
Bruce J. Highman
Highman, Highman & Ball
870 Market St., Suite 467
San Francisco, CA  94102
Tel: (415) 982-5563
Fax:  (415) 982-5202

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 16, 2007, at San Francisco, California.

Bob Lieberman

*William O'Sullivan v. The Regents of the University of California, et al.*

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

UCR/1046827/5048469v.1

NOTICE OF REMOVAL PURSUANT TO 28 U.S.C § 1441(B)

# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Louis A. Highman #61703, Bruce J. Highman #101760<br>Highman, Highman & Ball<br>870 Market Street, Suite 467<br>San Francisco, CA 94102 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: (415) 982-5563    FAX NO.: (415) 982-5202<br>ATTORNEY FOR *(Name):* Plaintiff William O'Sullivan | **FILED**<br>San Francisco County Superior Court<br><br>JUL 2 6 2007<br><br>GORDON PARK-LI, Clerk<br>BY: _Param Natt_<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
William O'Sullivan v. The Regents of the University of California, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>CGC-07-465498 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort**<br>☐ Auto (22)<br>☐ Uninsured motorist (46)<br>**Other PI/PD/WD (Personal Injury/Property**<br>**Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23)<br>**Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35)<br>**Employment**<br>☑ Wrongful termination (36)<br>☐ Other employment (15) | **Contract**<br>☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37)<br>**Real Property**<br>☐ Eminent domain/Inverse<br>condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26)<br>**Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02)<br>☐ Other judicial review (39) | **Provisionally Complex Civil Litigation**<br>**(Cal. Rules of Court, rules 3.400–3.403)**<br>☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |
|---|---|---|

2. This case ☐ is  ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties      d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence          f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* Three (3)
5. This case ☐ is  ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 26, 2007

Louis A. Highman, Esq.
_____          _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

1  LOUIS A. HIGHMAN, State Bar No. 61703
   BRUCE J. HIGHMAN, State Bar No. 101760
2  HIGHMAN, HIGHMAN & BALL
   A Professional Law Association
3  870 Market Street, Suite 467
   San Francisco, CA 94102
4  Telephone:  (415) 982-5563
   Facsimile:  (415) 982-5202
5
   Attorneys for Plaintiff and Petitioner William O'Sullivan
6

SUMMONS ISSUED
**FILED**
San Francisco County Superior Court

JUL 2 6 2007

GORDON PARK-LI, Clerk
BY: _____
                    Deputy Clerk
/P. NATT

7                                    CASE MANAGEMENT CONFERENCE SET

8                                    DEC 2 8 2007 -9ᵒᵒ AM

9        SUPERIOR COURT OF CALIFORNIA
                                     DEPARTMENT 212
10         COUNTY OF SAN FRANCISCO

11          UNLIMITED JURISDICTION

12

13
   WILLIAM O'SULLIVAN,
14                                   Case No. CGC-07-465498
        Plaintiff and Petitioner,
15                                   COMPLAINT--
          -v-                        WRONGFUL DISCHARGE
16                                   AGAINST PUBLIC
   THE REGENTS OF THE UNIVERSITY     POLICY; VIOLATION OF
17 OF CALIFORNIA; DOES I-XX,         REHABILITATION ACT
                                     OF 1973 (29 U.S.C.
18     Defendants and Respondents.   SECTIONS 794, ET
                                     SEQ.);  CAUSE OF
19                                   ACTION FOR PETITION
                                     FOR WRIT OF
20                                   ADMINISTRATIVE
                                     MANDAMUS AND/OR
21                                   MANDAMUS ALONG WITH
                                     DAMAGES
22
                                     [LABOR]
23
   _____/
24
        Plaintiff William O'Sullivan complains and alleges as
25
   follows:
26
                    PARTIES AND FACTS
27
        1.  Plaintiff and petitioner William O'Sullivan is and
28
                            1
   _____
   Complaint

1   at all times relevant hereto, was a resident of the City and
2   County of San Francisco, California, and was employed in the
3   City and County of San Francisco by defendant and respondent
4   The Regents of the University of California at the Mt. Zion
5   facility as a senior nuclear medicine technologist.    At all
6   relevant times herein he was a member of the University
7   Professional and Technical Employees Union's Health Care
8   Professionals Unit ("UPTE").

9       2.    Plaintiff is informed and believes and thereby
10  alleges that defendant and respondent The Regents of the
11  University of California is a state entity responsible for
12  administering the University of California system, including
13  the University of California at San Francisco, including the
14  Mt. Zion facility affiliated with the University of California
15  at San Francisco.

16      3.    The true names and capacities of the defendants and
17  respondents ("defendants") named herein as Does I-XX,
18  inclusive, whether individual, corporate, associate, or
19  otherwise, are unknown to plaintiff who therefore sues such
20  defendants by fictitious names pursuant to California Code of
21  Civil Procedure Section 474.    Plaintiff is informed and
22  believes that Doe Defendants are California residents.
23  Plaintiff will amend this complaint to show such true names
24  and capacities when they have been determined.

25      4.    Plaintiff is informed and believes, and thereby
26  alleges that at all relevant times, each of the defendants was
27  the agent, employee or representative of each of the other
28

2

Complaint

1  defendants and acted within the scope of that authority, with
2  the permission and consent of the co-defendants and each of
3  them, at their discretion and control, with the ratification
4  of and agreement with the acts of each defendant by the
5  others.

6      5.    Plaintiff William O'Sullivan was a senior nuclear
7  medicine technologist/nuclear medicine technologist at the
8  University of California San Francisco Mt. Zion campus in San
9  Francisco, California.  He was employed in that capacity by
10 defendant Regents of the University of California and/or its
11 predecessor entity starting in or about 1990.   On or about
12 August 23, 2005, upon returning from vacation, he received
13 notification from defendants that he was being involuntarily
14 terminated from his employment for allegedly having abandoned
15 his job.   The first day plaintiff had not shown up for work
16 was on or about Tuesday, July 26, 2005.    Plaintiff's
17 understanding was that he was on vacation on that date, and
18 continued on vacation until he returned to work on August 23,
19 2005.  Plaintiff worked a short time on August 23, 2005 before
20 reading a notice which had been sent to him while he was on
21 vacation indicating to him he was being involuntarily
22 terminated.  He spent his vacation traveling to New York state
23 where he customarily has gone for approximately four weeks
24 each summer for a number of summers in order to help take care
25 of his elderly father (who is in his nineties and who has
26 health issues).  Plaintiff never submitted any resignation to
27 defendants and did not abandon his job, but went on vacation
28

3

Complaint

1  which he arranged for in the same way he had arranged for it

2  previously without problems, and which he understood was

3  approved, and which vacation time was covered by accrued paid

4  time off.

5       6.    Plaintiff's job as a senior nuclear medicine

6  technologist/nuclear medicine technologist involved the

7  injection of isotopes for imaging study.   The majority of his

8  patients were either heart or cancer patients. The physical

9  part of his job involved moving the collimaters, which are

10 quite heavy, and also positioning and transfer of patients in

11 and out of the table.

12      7.    In or about 1995, plaintiff developed lower back

13 issues.

14      8.    In or about October 1996, plaintiff became aware of

15 aching discomfort, sometimes a sharp stabbing pain in the

16 right shoulder blade, to the inner aspect of the wing bone.

17      9.    The situation continued to deteriorate thereafter,

18 and plaintiff was diagnosed as having a disability, suffering

19 from chronic cervical dysfunction and strain, with underlying

20 degenerative disease of the lower cervical spine.

21      10.   Based on the advice of his treating physician(s),

22 plaintiff requested and received a reasonable accommodation

23 for his disability to have his workload reduced so he would

24 work six hours per day, four days per week.   This

25 accommodation was requested in or about 1997.

26      11.   In or about June/July 2004, the department

27 implemented a practice that all technicians take holiday and

28

                              4

Complaint

1  after-hour call and rotate to both campuses (Mt. Zion and

2  Parnassus). This would have required plaintiff to, at times,

3  work significantly more than a 24 hour workweek, and to work,

4  at least on occasion, on the Parnassus campus and not only the

5  Mt. Zion campus.

6      12.   Based on the advice of his physician, plaintiff

7  sought a reasonable accommodation for his disability which

8  would not have required him to take holiday and after-hour

9  call and work on the Parnassus campus. Plaintiff's physician

10  communicated that plaintiff needed to continue working a six-

11  hour per day, four-day workweek, and needed to take three

12  consecutive days off, all of which would preclude additional

13  scheduling for him on holiday or after-hour call duty.

14  Additionally, plaintiff's treating physician indicated that

15  the Parnassus campus (the main campus) would require him to be

16  on his feet more, which had led to pain in the past and would

17  do so again if he had to work on that campus.

18      13.   Defendants resisted plaintiff's request for

19  reasonable accommodation, as aforesaid.

20      14.   On or about December 20, 2004, plaintiff filed a

21  union grievance on the situation, in which it was stated:

22  "Bill has a previous work injury that is under review for

23  accommodation under the ADA. The dept. refused to take Bill

24  off of the holiday rotation, even though he has a doctor's

25  letter stating that he is not to work holidays or call. Bill

26  is being discriminated against for his disability. His boss

27  is mad and she's taking out her anger on him." The grievance

28

<center>5</center>

Complaint

1  requested the following remedy:  "Make whole in every way.
2  Remove Bill from the holiday and call rotation schedules.
3  Acknowledge and provide accommodation for Bill and his
4  disability."

5      15.  After the grievance was filed, Evelyn Galenski, an
6  HR employee of defendant, was assigned to facilitate a
7  resolution of the issue.  The end result was a recommendation
8  by Galenski made on March 3, 2005 in writing that plaintiff
9  was unable to be considered for "on-call" status because such
10 on-call status would potentially last longer than the
11 limitation of a 6 hour work day allowed due to disabling
12 injuries sustained by plaintiff in or about 1996 and/or 1997.

13     16.  In or about late June, July, and August 2005,
14 defendants were changing their system for keeping time and
15 clocking in and out and arranging for vacations, and were in
16 the process of training staff to use the system (HBS
17 computerized system).  They had not yet finished the training,
18 and plaintiff had not yet been trained, as required, and he
19 had notified defendants he was having trouble using the new
20 system.  The new system was not yet considered to be
21 implemented, related to, including without limitation, because
22 the training was not yet completed.

23     17.  In or about July 2005, plaintiff spoke to Ray
24 Darvisher about his intention to take four weeks of vacation
25 from July 26, 2005 (first day off) to August 23, 2005 (first
26 day back), which was his custom, to New York state to visit
27 and help take care of his elderly father.  Plaintiff's
28

6

Complaint

1   understanding was that Darvisher served in a lead capacity and
2   administrative capacity for nuclear medicine technologists
3   working at the Mt. Zion facility, and he had customarily in
4   the past spoken to Darvisher to arrange for and obtain any
5   approval necessary to take his vacation.  Darvisher indicated
6   to him it was fine, but to e-mail Sylvia Corpuz (the Associate
7   Chief, who was not located at the Mt. Zion campus) to let her
8   know the dates he would be off on vacation.  Accordingly,
9   plaintiff promptly e-mailed Corpuz, informing her of his
10  upcoming vacation plans. Plaintiff's first work day off was to
11  be Tuesday, July 26, 2005 and he was scheduled to return on
12  August 23, 2005.  His last day at work before leaving on
13  vacation was scheduled to be Friday, July 22, 2005.  When
14  plaintiff was scheduled to work, he customarily would work
15  Tuesdays   through   Fridays,   related   to   the   reasonable
16  accommodation for his disability.

17       18.   Plaintiff followed the steps he had customarily
18  taken    previously    to    notify    defendants,    and    obtain
19  authorization for, his vacation (July 26 [first date off] to
20  August 23 [first day back]).  He notified Ray Darvisher of the
21  planned vacation dates, and notified (by e-mail) Sylvia Corpuz
22  pertaining thereto--the same procedure he had used without
23  problem in the past.  He also filled out the calendar showing
24  he would be gone for the period July 26, 2005 (first day off)
25  to August 23, 2005 (first day back).  He also submitted his
26  time record cards in advance indicating he was taking paid
27  vacation time and would not be present and that he was using
28

7

Complaint

1  paid vacation time instead.  He submitted these time records

2  ahead of time through August 13, intending to fill out the

3  period from August 14 to August 27 when he would return (he

4  was returning on August 23, 2005).  He also wrote a note on

5  these time record cards he was submitting in advance to Sylvia

6  Corpuz, Associate Chief, who was in his supervisory chain of

7  command (although she was not located at the Mt. Zion worksite

8  where plaintiff worked), indicating he had been having

9  problems with the new HBS computerized system regarding

10 filling out time records.  Plaintiff had, in fact, been unable

11 to input his vacation time into the computer because he was

12 having difficulty logging in under the new HBS system, which

13 he still needed further training on.

14      19.    On or about July 28, 2005, Kathy Knoerl, UCSF

15 Medical Center Radiology Operations Director sent an undated

16 letter by mail to plaintiff addressed to his San Francisco

17 home address, indicating in pertinent part that, "Please be

18 advised that it came to my attention that you have been absent

19 from work beginning Monday, July 25, 2005 to the present.  The

20 Department does not have a record of any request from you for

21 vacation or other leave of any type or for this time period.

22 Further, there isn't any approval for this time off from your

23 Manager."  It should be noted that after plaintiff's last

24 working day before vacation (July 22, 2005) plaintiff's next

25 regular workday (if he would not be on vacation) would have

26 been Tuesday, July 26, 2006.  (Because of his disability, and

27 the accommodation for it, he was scheduled to work Tuesdays

28

8

Complaint

1  through Fridays of each week [not Mondays].)   A true and

2  correct copy of the undated letter sent July 28, 2005 by Kathy

3  Knoerl to plaintiff is attached hereto as Exhibit 1.

4      20.   The undated letter sent July 28, 2005 went on to

5  state in pertinent part that, "As a result you have been on

6  unauthorized and unapproved leave since Monday, July 25,

7  2005."   The letter then went on to state further, "UCSF

8  Medical Center cannot and will not tolerate conduct of this

9  type.   Therefore, you are directed to report to work tomorrow

10 at your normally scheduled shift and time.   If you fail to

11 report to work, we will treat your action as job abandonment

12 and will accept this as your resignation from the medical

13 Center pursuant to Article 33, Sections B, C, D, and E of the

14 collective bargaining agreement between the University of

15 California and UPTE."   The undated letter failed to specify

16 what "tomorrow" meant, and in fact if it was mailed July 28,

17 as it was purported to be, it would have arrived most likely

18 sometime on Friday, July 29, and "tomorrow" (if it referred to

19 the next day after arrival of the letter--Saturday) would not

20 have been a scheduled workday for plaintiff.   In any event,

21 when this undated letter sent July 28, 2005 arrived at

22 plaintiff's San Francisco home, plaintiff was in New York on

23 his four-week vacation, and so plaintiff did not see any of

24 this correspondence, including the undated letter sent July

25 28, 2005, until his return from his vacation on or about

26 August 23, 2005, when he reported to work, and then while at

27 work opened his mail to catch up, and realized what had

28

9

Complaint

1  happened.

2      21.    On or about August 8, 2005, Kathy Knoerl, UCSF

3  Medical Center Radiology Operations Director sent plaintiff a

4  letter dated August 8, 2005, a true and correct copy of which

5  is attached hereto as Exhibit 2.    The letter stated in

6  pertinent part, "A letter was sent to your house on Thursday,

7  July 28, 2005 regarding your unapproved absence from the work

8  place. The department did not receive a pre-approval request

9  from you for vacation or other leave of any type.    Therefore,

10  there is no approval for this time off from your Manager.    As

11  you are aware and were informed, your Manager must review and

12  give prior approval for requests for all time off."    The

13  letter went on to state, "UCSF Medical Center cannot and will

14  not   tolerate   conduct   of   this   type.    Since   you   have

15  consistently   failed   to   report   to   work   at   your   normally

16  scheduled   shift   and   time   since   July   28,   2005   and   prior

17  thereto,   your   termination   will   be   treated   as   a   resignation

18  from the medical Center pursuant to Article 33, Sections B, C,

19  D, and E of the collective bargaining agreement between the

20  University of California and UPTE."    The letter went on to

21  state that, "Resignation papers will be processed regarding

22  your job abandonment from the UCSF Medical Center."    Plaintiff

23  did not receive this letter when it arrived at his house, and

24  did not have an opportunity to review it until he picked up

25  his mail from his neighbor who had kept it for him unopened

26  while he was gone on vacation, and then opened it after

27  returning from his vacation and returning to work on or about

28

10

Complaint

August 23, 2005. (The neighbor had given plaintiff the unopened mail which had come in and which the neighbor had been collecting for him in his absence while he was gone on vacation the night before plaintiff returned to work on or about August 23, 2005, when plaintiff had arrived back in town from his vacation, but plaintiff did not open it until the next day, August 23, 2005.)

22. In order for a termination to be treated as a resignation, under Article 33 of the collective bargaining agreement, as aforesaid, there must first be a failure to report to work as scheduled for five (5) consecutive work days. There also is a requirement in Article 33 that before separating the employee, the University must provide a written notification of its intent to separate the employee, including the reasons for separation; must notify the employee of his/her right to respond to the University within fourteen calendar days thereafter; and must notify the employee that he/she shall have fourteen calendar days from the mailing of such notice to respond to the University prior to his/her separation. Under Article 33, the employee's response may be in writing or at a meeting with a designated University official, who has the authority to effectively recommend reinstatement of the employee. Under Article 33, following the employee's timely response, or if no response was provided within fourteen calendar days, the decision of the designated University official is rendered, and this decision is not subject to the grievance and/or arbitration provisions of the

11



1  collective bargaining agreement.  A true and correct copy of
2  Article 33 of the collective bargaining agreement is attached
3  hereto as Exhibit 3.

4      23.   Plaintiff did not fail to report to work as
5  scheduled for five consecutive days, as he was on vacation
6  until August 23, 2005 (at which time he reported back to work,
7  as scheduled).  He was not scheduled to work on the days on
8  which defendants claimed he was scheduled to work; and in
9  fact, the schedule for the Mt. Zion campus nuclear medicine
10  technologists showed that he was not scheduled to work again
11  after July 22, 2005 until August 23, 2005.

12     24.   Moreover, defendants terminated plaintiff in their
13  August 8, 2005 letter to him, without having given him the
14  rights set forth in Article 33, as aforesaid, of notice of
15  intent to separate him, notice of the right of the affected
16  employee to respond in writing or in a meeting to the
17  University within 14 calendar days thereafter (and before a
18  separation would take place), and notice of the right to have
19  a designated University official who would have the authority
20  to effectively recommend reinstatement of the employee to make
21  a decision on the issue. The aforesaid 14-day notice of right
22  to respond was never mailed to plaintiff.   The University
23  indicated it was terminating him on the same day he received a
24  notice of intent to terminate him (the August 8, 2005 letter),
25  and he never received the formal 14-day notification of
26  opportunity to respond, and decision by designated university
27  official after such a response would be received prior to

28

12

Complaint



1   being terminated on or about August 8, 2005.

2       25.   When plaintiff returned from his vacation on or
3   about August 22, 2005, he collected his unopened mail from a
4   neighbor who had kept it for him when he was gone.

5       26.   He reported to work on August 23, 2005 and worked
6   for a while, at which time he opened his unopened mail the
7   neighbor had given him the night before, and realized he was
8   terminated.  Accordingly, he stopped working and went home.

9       27.   On or about August 26, 2005, plaintiff filed a
10  grievance under the union's collective bargaining agreement
11  alleging he had been wrongfully terminated, that there was a
12  "totally defective 'intent to dismiss' process; lack of just
13  cause and lack of due process; reprisal for participating in
14  grievance procedures. . ."  A true and correct copy of the
15  grievance is attached hereto as Exhibit 4.

16      28.   On or about November 16, 2005, Russ Ritter,
17  Manager, Adjudication and Training for defendants sent a
18  letter containing a response to the grievance to plaintiff's
19  union, denying the grievance, putting forth a rationale
20  supporting the action taken as having been a "resignation/job
21  abandonment" under Article 33, and indicating the "resignation
22  was effected on August 22, 2005."  A true and correct copy of
23  this November 16, 2005 letter is attached hereto as Exhibit 5.

24      29.   Thereafter the matter was taken to arbitration.
25  Arbitrator John Kagel, Esq. ruled on September 1, 2006 that
26  the July 28, 2005 letter and the August 8, 2005 letter did not
27  meet the requirements of Article 33.B.1 in terms of giving the

28
                              13

Complaint

1   notice required by the Article prior to the employer deciding

2   there had been a resignation/job abandonment.   However, the

3   Arbitrator held that the employee had in effect responded

4   pursuant to the grievance process; and that "... after

5   receiving the response [through the grievance process] it [the

6   employer] reaffirmed its decision to consider the Grievant as

7   abandoning the job. (See Jt. Ex. 6.)   That process cured the

8   notice deficiencies.  The Arbitrator, by the Agreement's

9   language, cannot review that determination since he cannot

10  ignore Article 33.B.3 as he would be required to do so." The

11  arbitrator went on to hold that since a decision of job

12  abandonment/resignation made under Article 33 is not grievable

13  under Article 33.B.3, he could not review the decision by the

14  University to consider the Grievant as abandoning the job.  He

15  indicated such issue—the merits of the case and whether in

16  fact the grievant (plaintiff) abandoned his job or not was not

17  grievable under the Union contract, and whether the law was

18  broken in connection with the personnel action in some way or

19  another was not something he was allowed to rule on under the

20  non-grievable provision for resignation/abandonment of job

21  decisions set forth in Article 33.B.3.   The Arbitrator

22  concluded by sting, "The issues raised here must be decided in

23  other forums than arbitration under the Agreement if any are

24  available."   He then wrote, "The determination that William

25  O'Sullivan abandoned his job is not arbitrable under the

26  Parties Collective Bargaining Agreement."   A true and correct

27  copy of the Arbitrator's decision of September 1, 2006 is

28

14

Complaint

1  attached hereto as Exhibit 6.

2     30. Plaintiff has exhausted all requisite administrative

3  remedies prior to bringing the judicial action herein.

4                    FIRST CAUSE OF ACTION

5     (TORTIOUS WRONGFUL ADVERSE PERSONNEL ACTION, INCLUDING

6    TORTIOUS WRONGFUL DISCHARGE AGAINST PUBLIC POLICY, BROUGHT

7                     AGAINST ALL DEFENDANTS)

8     31.  Plaintiff refers to the allegations of paragraphs

9  1-30 of this complaint, and incorporates the same herein by

10  this reference as though set forth in full.

11     32. Defendants' adverse action of terminating plaintiff

12  based on a claim on their part he had resigned/abandoned his

13  job position constituted tortious wrongful adverse personnel

14  action and/or tortious wrongful discharge against public

15  policy, in that defendants undertook said tortious wrongful

16  adverse personnel action in violation of fundamental public

17  policies with a statutory basis, including, without

18  limitation, any or all of the following:  (A) Defendants took

19  said tortious wrongful adverse personnel action against

20  plaintiff related to plaintiff having sought reasonable

21  accommodation(s) for his physical disabilities. (B)

22  Defendants took the aforesaid adverse personnel action

23  against plaintiff related to his having a physical

24  disability. (C) Defendants took said tortious wrongful

25  adverse personnel action against public policy toward

26  plaintiff in violation of his due process rights, in terms of

27  depriving him of his job and livelihood which he had a

28
                           15

Complaint

1  property interest in without affording him, and denying him,

2  pre-termination due process rights and without affording him,

3  and denying him, post-termination due process rights. (D)

4  Defendants took said tortious wrongful adverse personnel

5  action against public policy toward plaintiff based on his

6  protesting and opposing disability discrimination by

7  defendants.

8      33.  The public policies violated in the aforesaid

9  regard have a statutory and/or constitutional basis,

10  including, without limitation, in the California Fair

11  Employment and Housing Act (including California Government

12  Code Sections 12920, 12921, and 12940), and in Article I,

13  Section 7 of the California Constitution.

14      34.  As a proximate result of defendants' wrongful

15  conduct, as aforesaid, plaintiff has suffered, and continues

16  to suffer, economic loss, in an amount to be shown according

17  to proof.

18      35.  As a further proximate result of defendants'

19  wrongful conduct, as aforesaid, plaintiff has suffered, and

20  continues to suffer, emotional distress, mental anguish,

21  shame, embarrassment, humiliation, pain and suffering,

22  physical injury, and injury to reputation, in an amount to be

23  shown according to proof.

24      36. Defendants' conduct was willful, oppressive, and

25  malicious, and plaintiff is entitled to an award of punitive

26  and exemplary damages, according to proof.

27      WHEREFORE, plaintiff prays judgment against defendants

28

16

Complaint



1  and each of them as set forth below.

2  SECOND CAUSE OF ACTION

3  (VIOLATION OF REHABILITATION ACT OF 1973, 29 U.S.C. SECTIONS

4  794 ET SEQ., BROUGHT AGAINST ALL DEFENDANTS)

5  37.  Plaintiff refers to the allegations of paragraphs

6  1-30 of this complaint, and incorporates the same herein by

7  this reference as though set forth in full.

8  38.  Defendants Regents of the University of California

9  and Does I-III qualify as a "program or activity" receiving

10  Federal financial assistance, and are otherwise subject to the

11  disability discrimination provisions set forth in the

12  Rehabilitation Act of 1973, 29 U.S.C. Sections 794 et seq.

13  39.  Plaintiff suffered from a disability as covered by

14  the Rehabilitation Act of 1973, 29 U.S.C. Sections 794 et seq.

15  Additionally, he engaged in protected activity covered and

16  made redressable by the Rehabilitation Act of 1973, 29 U.S.C.

17  Sections 794 et seq., including, without limitation, making

18  requests for reasonable accommodations for disability, and

19  opposing disability discrimination and failure to make

20  reasonable accommodation for disability.

21  40.  Defendants Regents of the University of California

22  and Does I-III violated the Rehabilitation Act of 1973,

23  including, without limitation, 29 U.S.C. Sections 794 et seq.

24  by including, without limitation, discriminating against

25  plaintiff based on his disability, based on his making

26  requests for reasonable accommodations for his disability,

27  and/or based on his opposing disability discrimination and

28

17

1 failure to make reasonable accommodation for disability, by

2 including without limitation, terminating him involuntarily

3 from his employment (and characterizing the termination as

4 alleged resignation/job abandonment).

5     41.  As a proximate result of defendants' wrongful

6 conduct, as aforesaid, plaintiff has suffered, and continues

7 to suffer, economic loss, in an amount to be shown according

8 to proof.

9     42.  As a further proximate result of defendants'

10 wrongful conduct, as aforesaid, plaintiff has suffered, and

11 continues to suffer, emotional distress, mental anguish,

12 shame, embarrassment, humiliation, pain and suffering,

13 physical injury, and injury to reputation, in an amount to be

14 shown according to proof.

15     43.  Plaintiff seeks all remedies entitled to him under

16 the Rehabilitation Act of 1973, 29 U.S.C. Sections 794 et

17 seq., including, without limitation, reinstatement, back pay

18 plus interest, appropriate adjustment of pay and benefits, and

19 appropriate correction and expungement of his personnel

20 record.

21     44.  Plaintiff has had to hire attorneys to prosecute

22 the matter herein, and is entitled to an award of reasonable

23 attorneys' fees and costs, according to proof.

24     WHEREFORE, plaintiff prays judgment against defendants

25 and each of them as set forth below.

26                    THIRD CAUSE OF ACTION

27     (CAUSE OF ACTION FOR PETITION FOR WRIT OF ADMINISTRATIVE

28

                              18

Complaint

1 MANDAMUS AND/OR MANDAMUS, ALONG WITH DAMAGES (C.C.P. SECTIONS

2    1094.5, 1095, AND 1085, BROUGHT AGAINST DEFENDANT AND

3    RESPONDENT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA)

4    45.  Plaintiff refers to the allegations of paragraphs

5 1-30 of this complaint, and incorporates the same herein by

6 this reference as though set forth in full.

7    46.  Plaintiff/petitioner William O'Sullivan petitions

8 this Court for a writ of mandate under Code of Civil Procedure

9 Section 1094.5, directed to defendant/respondent The Regents

10 of the University of California, and seeks damages incidental

11 to the writ, under Code of Civil Procedure Section 1095.

12 Alternatively, plaintiff seeks a writ of mandate under Code of

13 Civil Procedure Section 1085, if the Court views that section

14 as the appropriate section to proceed upon.

15    47.  Plaintiff/petitioner William O'Sullivan is a former

16 employee of defendant/respondent The Regents of the University

17 of California, who was discharged from his employment

18 effective on or about August 22, 2005.  Said discharge was

19 alleged by defendant/respondent to be a resignation/job

20 abandonment. Defendant/respondent The Regents of the

21 University of California is a statewide administrative agency

22 possessing adjudicatory powers derived from the California

23 Constitution as to the problems and purposes of its personnel.

24    48.  At all times mentioned herein, defendant/respondent

25 has been and is now the entity charged with conducting

26 evidentiary hearings and rendering final decisions in internal

27 appeals brought by its employees contesting adverse personnel

28

19

Complaint

1 actions, including termination based on alleged

2 resignation/job abandonment.

3     49.  Plaintiff/petitioner William O'Sullivan exhausted

4 all available administrative remedies required to be pursued

5 by him which were made available to him.

6     50.  Plaintiff and petitioner William O'Sullivan had a

7 property interest in his employment, which he could not be

8 deprived of without being afforded pre-removal due process

9 rights and/or post-removal due process rights and/or which he

10 could not be deprived of if there were other defects in his

11 termination.

12     51.  Defendant and respondent The Regents of the

13 University of California, in connection with its termination

14 of plaintiff/petitioner William O'Sullivan, proceeded in

15 excess of its jurisdiction and/or prejudicially abused its

16 discretion, in that: (A) It failed to proceed in the manner

17 required by law including, without limitation, in that (1) it

18 denied plaintiff and petitioner his pre-removal due process

19 rights, and terminated him effective on or about August 22,

20 2005, including without limitation without following the

21 procedures set forth in Article 33(B) of the applicable

22 collective bargaining agreement as having to be followed prior

23 to removing someone because of job abandonment, including

24 without limitation in that plaintiff/petitioner was not

25 notified of the right to respond within 14 calendar days, and

26 the termination of him for resignation/job abandonment was put

27 into effect prior to a response by plaintiff/petitioner and

28

<div align="center">20</div>

Complaint

1  prior to a designated University official with the authority

2  to effectively recommend reinstatement of the employee making

3  any decision after due consideration of any response by the

4  employee; (2) it initiated proceedings to terminate

5  plaintiff/petitioner based on job abandonment under Article

6  33(B) prior to plaintiff/petitioner failing to report to work

7  as scheduled for five consecutive work days, as required by

8  Article 33(B); (3) it terminated plaintiff/petitioner based on

9  job abandonment under Article 33(B) prior to

10  plaintiff/petitioner failing to report to work as scheduled

11  for five consecutive work days, as required by Article 33(B);

12  (4) it denied plaintiff and petitioner his post-removal due

13  process rights; (e) it invoked job abandonment as a reason to

14  discipline and terminate plaintiff/petitioner even though

15  plaintiff/petitioner had not failed to report to work as

16  scheduled for five consecutive days, which is a prerequisite

17  for invoking the section; (f) it denied plaintiff/petitioner

18  due process and equal protection rights in that he was

19  penalized for not using a new system to report vacation time

20  when the system had not yet been instituted, and training of

21  all persons (including plaintiff/petitioner) had not yet been

22  completed; (g) it terminated plaintiff/petitioner and took

23  adverse action against plaintiff/petitioner based on his

24  exercising free speech rights, and complaining of

25  discrimination, retaliation, and working conditions; (h) it

26  did not appoint a proper designated University official to

27  give a response to, hold a meeting with, have the authority to

28

21

Complaint

1  effectively recommend reinstatement of the employee, and
2  otherwise provide sufficient due process; (i) it denied
3  plaintiff/petitioner his equal protection rights by singling
4  him out and treating him differently, in an arbitrary fashion,
5  and depriving him of his job and livelihood in an arbitrary
6  fashion; (j) it failed to follow the rules, regulations,
7  policies, and procedures applicable to the situation in
8  depriving plaintiff of his property interest and employment
9  and livelihood; (k) it acted in a capricious and arbitrary
10  manner, and deprived plaintiff/petitioner of his due process
11  and equal protection rights; (l) it failed to afford
12  plaintiff/petitioner fairness and impartiality of treatment;
13  (m) it failed to give plaintiff and petitioner an adequate
14  opportunity to respond to the charges upon which the adverse
15  personnel decision was being based; and (n) it put his
16  termination from employment into effect before the time had
17  run for him to respond, before giving him adequate notice to
18  respond, and before considering his response and making a
19  decision having taken his response into account. Defendant and
20  respondent also proceeded in excess of its jurisdiction and/or
21  prejudicially abused its discretion in that its decision was
22  not supported by the evidence before it in making its
23  decision.  Defendant and respondent also proceeded in excess
24  of its jurisdiction and/or prejudicially abused its discretion
25  in that it rendered the adverse decision without having made
26  sufficient findings on the underlying pertinent issues.
27  Defendant and respondent also proceeded in excess of its
28

22

Complaint

1  jurisdiction and/or prejudicially abused its discretion in
2  that it did not inform plaintiff/petitioner of the real
3  reason(s) it was terminating him, or give him an opportunity
4  to respond to said real reason(s). Defendant and respondent
5  also proceeded in excess of its jurisdiction and/or
6  prejudicially abused its discretion in that it treated the
7  matter as an Article 33 matter under the collective bargaining
8  agreement (resignation/job abandonment) instead of an Article
9  6 matter under the collective bargaining agreement
10 (discharge), when there was insufficient evidence to proceed
11 on the matter as an Article 33 matter, and in not giving
12 plaintiff and petitioner the due process protections which
13 would have been provided by proceeding under Article 6 instead
14 of Article 33.

15     52. Plaintiff/petitioner has exhausted the available
16 administrative remedies required to be pursued by him.

17     53. Plaintiff/petitioner does not have a plain, speedy,
18 and adequate remedy in the ordinary course of law.

19     54. Plaintiff/petitioner has relevant evidence to offer
20 which he will offer at the hearing on this petition. A
21 hearing was not conducted on the issues pertinent to deciding
22 this case, because the decision to characterize
23 plaintiff/petitioner as having abandoned his job was found not
24 grievable under the provisions of Article 33 of the collective
25 bargaining agreement (and accordingly evidence pertaining to
26 the issue of whether or not in fact he was properly terminated
27 or had in fact abandoned his job was not admissible and was

28

23

complaint

1  not considered), and because there was no hearing held other

2  than the limited hearing held before the arbitrator on the

3  limited issue he addressed, which did not address the issues

4  being raised herein (which the arbitrator himself pointed out

5  in his decision, a copy of which is attached hereto as Exhibit

6  6).

7      55.   Plaintiff/petitioner has been denied the use and

8  enjoyment of his property interest in, and rights to,

9  employment by defendant/respondent, from which he has been

10 unlawfully precluded by defendant/respondent.

11     WHEREFORE, plaintiff and petitioner William O'Sullivan

12 hereby prays judgment against defendants and respondents each

13 of them as follows:

14     1.   On the First Cause of Action, for general damages

15 and for special damages, according to proof.

16     2.   On the Second Cause of Action, for general damages,

17 for special damages, and for an award of reasonable attorneys'

18 fees, according to proof.

19     3.   On the Third Cause of Action, that a peremptory writ

20 of mandate issue directed to defendant and respondent Regents

21 of the University of California, and compelling it to set

22 aside its decision terminating plaintiff/petitioner William

23 O'Sullivan, that it reinstate the plaintiff/petitioner to the

24 position he held of a senior nuclear medicine technologist,

25 that it restore to plaintiff/petitioner all back pay and

26 benefits that he would have received but for the termination

27 from the date of termination until such date as he is

28

24

Complaint

1   reinstated, that it pay to plaintiff/petitioner interest on
2   the back pay at the full legal rate, such interest accruing
3   from the date each paycheck or other pay item disbursement
4   would have been received had petitioner not been discharged,
5   that it remove from his personnel file or any other file used
6   for personnel purposes documentation relating to the incident
7   adjudicated in this petition, and refrain from using the
8   incident adjudicated in his petition in any way adverse to
9   petitioner; and for any other damages, according to proof.

10      4.  For costs of suit; and

11      5.  For such other and further relief as this Court
12  deems just and proper.

13      DATED:  July 26, 2007.

14                          LOUIS A. HIGHMAN
                            BRUCE J. HIGHMAN
15                          LAW OFFICES OF HIGHMAN, HIGHMAN
                                & BALL
16
17                          By
                               Attorneys for Plaintiff
18                             William O'Sullivan

19

20

21

22

23

24

25

26

27

28
                              25

Complaint

*Rec'd by cmk 8/3/07*
*12:14 pm*

**SUM-100**

| | |
|---|---|
| **SUMMONS** TO FIRST AMENDED COMPLAINT *(CITACION JUDICIAL)* | **FOR COURT USE ONLY** *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
DOES I-XX,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
WILLIAM O'SULLIVAN,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | **CASE NUMBER:** *(Número del Caso):* CGC-07-465498 |

Superior Court of California, County of San Francisco
400 McAllister Street
San Francisco, California 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Louis A. Highman #61703, Bruce J. Highman #101760, HIGHMAN, HIGHMAN & BALL
870 Market Street, Suite 467, San Francisco, California 94102, Telephone: (415) 982-5563

DATE: **JUL 2 7 2007**  GORDON PARK-LI  Clerk, by _____, Deputy
*(Fecha)*  *(Secretario)*  *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* The Regents of the University of California
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* CCP 416.50 (public entity)
4. ☑ by personal delivery on *(date):* 8/3/07

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc. | www.USCourtForms.com

ENDORSED
F I L E D
San Francisco County Superior Court

JUL 2 7 2007

GORDON PARK-LI, Clerk
BY___ELIZABETH ZALDIVAR___
Deputy Clerk

1 LOUIS A. HIGHMAN, State Bar No. 61703
BRUCE J. HIGHMAN, State Bar No. 101760
2 HIGHMAN, HIGHMAN & BALL
A Professional Law Association
3 870 Market Street, Suite 467
San Francisco, CA 94102
4 Telephone:  (415) 982-5563
Facsimile:  (415) 982-5202
5

Attorneys for Plaintiff and Petitioner William O'Sullivan
6

7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                      COUNTY OF SAN FRANCISCO

11                       UNLIMITED JURISDICTION

12

13

WILLIAM O'SULLIVAN,

14         Plaintiff and Petitioner,          Case No. 465498

15                                            FIRST AMENDED
                                              COMPLAINT--
16         -v-

17 THE REGENTS OF THE UNIVERSITY              VIOLATION OF OF
CALIFORNIA; DOES I-XX,                        REHABILITATION ACT
18                                            OF 1973 (29 U.S.C.
         Defendants and Respondents.          SECTIONS 794, ET
19                                            SEQ.); CAUSE OF
                                              ACTION FOR PETITION
20                                            FOR WRIT OF
                                              ADMINISTRATIVE
21                                            MANDAMUS AND/OR
                                              MANDAMUS ALONG WITH
22                                            DAMAGES

23                                               [LABOR]

24 _____/

25       Plaintiff  William  O'Sullivan  complains  and  alleges  as

26 follows:

27                       PARTIES AND FACTS

28
                                1

Complaint

1      1.  Plaintiff and petitioner William O'Sullivan is and

2  at all times relevant hereto, was a resident of the City and

3  County of San Francisco, California, and was employed in the

4  City and County of San Francisco by defendant and respondent

5  The Regents of the University of California at the Mt. Zion

6  facility as a senior nuclear medicine technologist.  At all

7  relevant times herein he was a member of the University

8  Professional and Technical Employees Union's Health Care

9  Professionals Unit ("UPTE").

10      2.  Plaintiff is informed and believes and thereby

11  alleges that defendant and respondent The Regents of the

12  University of California is a state entity responsible for

13  administering the University of California system, including

14  the University of California at San Francisco, including the

15  Mt. Zion facility affiliated with the University of California

16  at San Francisco.

17      3.  The true names and capacities of the defendants and

18  respondents ("defendants") named herein as Does I-XX,

19  inclusive, whether individual, corporate, associate, or

20  otherwise, are unknown to plaintiff who therefore sues such

21  defendants by fictitious names pursuant to California Code of

22  Civil Procedure Section 474.  Plaintiff is informed and

23  believes that Doe Defendants are California residents.

24  Plaintiff will amend this complaint to show such true names

25  and capacities when they have been determined.

26      4.  Plaintiff is informed and believes, and thereby

27  alleges that at all relevant times, each of the defendants was

28

2

Complaint

1   the agent, employee or representative of each of the other
2   defendants and acted within the scope of that authority, with
3   the permission and consent of the co-defendants and each of
4   them, at their discretion and control, with the ratification
5   of and agreement with the acts of each defendant by the
6   others.

7       5.   Plaintiff William O'Sullivan was a senior nuclear
8   medicine technologist/nuclear medicine technologist at the
9   University of California San Francisco Mt. Zion campus in San
10  Francisco, California.   He was employed in that capacity by
11  defendant Regents of the University of California and/or its
12  predecessor entity starting in or about 1990.   On or about
13  August 23, 2005, upon returning from vacation, he received
14  notification from defendants that he was being involuntarily
15  terminated from his employment for allegedly having abandoned
16  his job.   The first day plaintiff had not shown up for work
17  was on or about Tuesday, July 26, 2005.   Plaintiff's
18  understanding was that he was on vacation on that date, and
19  continued on vacation until he returned to work on August 23,
20  2005.  Plaintiff worked a short time on August 23, 2005 before
21  reading a notice which had been sent to him while he was on
22  vacation indicating to him he was being involuntarily
23  terminated.  He spent his vacation traveling to New York state
24  where he customarily has gone for approximately four weeks
25  each summer for a number of summers in order to help take care
26  of his elderly father (who is in his nineties and who has
27  health issues).   Plaintiff never submitted any resignation to
28

3

Complaint

1  defendants and did not abandon his job, but went on vacation
2  which he arranged for in the same way he had arranged for it
3  previously without problems, and which he understood was
4  approved, and which vacation time was covered by accrued paid
5  time off.

6      6.    Plaintiff's job as a senior nuclear medicine
7  technologist/nuclear medicine technologist involved the
8  injection of isotopes for imaging study.  The majority of his
9  patients were either heart or cancer patients. The physical
10 part of his job involved moving the collimaters, which are
11 quite heavy, and also positioning and transfer of patients in
12 and out of the table.

13     7.    In or about 1995, plaintiff developed lower back
14 issues.

15     8.    In or about October 1996, plaintiff became aware of
16 aching discomfort, sometimes a sharp stabbing pain in the
17 right shoulder blade, to the inner aspect of the wing bone.

18     9.    The situation continued to deteriorate thereafter,
19 and plaintiff was diagnosed as having a disability, suffering
20 from chronic cervical dysfunction and strain, with underlying
21 degenerative disease of the lower cervical spine.

22     10.   Based on the advice of his treating physician(s),
23 plaintiff requested and received a reasonable accommodation
24 for his disability to have his workload reduced so he would
25 work six hours per day, four days per week.   This
26 accommodation was requested in or about 1997.

27     11.   In or about June/July 2004, the department
28

                              4

Complaint

1  implemented a practice that all technicians take holiday and
2  after-hour call and rotate to both campuses (Mt. Zion and
3  Parnassus).  This would have required plaintiff to, at times,
4  work significantly more than a 24 hour workweek, and to work,
5  at least on occasion, on the Parnassus campus and not only the
6  Mt. Zion campus.
7       12.   Based on the advice of his physician, plaintiff
8  sought a reasonable accommodation for his disability which
9  would not have required him to take holiday and after-hour
10  call and work on the Parnassus campus.  Plaintiff's physician
11  communicated that plaintiff needed to continue working a six-
12  hour per day, four-day workweek, and needed to take three
13  consecutive days off, all of which would preclude additional
14  scheduling for him on holiday or after-hour call duty.
15  Additionally, plaintiff's treating physician indicated that
16  the Parnassus campus (the main campus) would require him to be
17  on his feet more, which had led to pain in the past and would
18  do so again if he had to work on that campus.
19       13.   Defendants resisted plaintiff's request for
20  reasonable accommodation, as aforesaid.
21       14.   On or about December 20, 2004, plaintiff filed a
22  union grievance on the situation, in which it was stated:
23  "Bill has a previous work injury that is under review for
24  accommodation under the ADA.  The dept. refused to take Bill
25  off of the holiday rotation, even though he has a doctor's
26  letter stating that he is not to work holidays or call.  Bill
27  is being discriminated against for his disability.  His boss
28

5

Complaint

1 is mad and she's taking out her anger on him." The grievance
2 requested the following remedy:  "Make whole in every way.
3 Remove Bill from the holiday and call rotation schedules.
4 Acknowledge and provide accommodation for Bill and his
5 disability."

6      15.  After the grievance was filed, Evelyn Galenski, an
7 HR employee of defendant, was assigned to facilitate a
8 resolution of the issue.  The end result was a recommendation
9 by Galenski made on March 3, 2005 in writing that plaintiff
10 was unable to be considered for "on-call" status because such
11 on-call status would potentially last longer than the
12 limitation of a 6 hour work day allowed due to disabling
13 injuries sustained by plaintiff in or about 1996 and/or 1997.

14      16.  In or about late June, July, and August 2005,
15 defendants were changing their system for keeping time and
16 clocking in and out and arranging for vacations, and were in
17 the process of training staff to use the system (HBS
18 computerized system).  They had not yet finished the training,
19 and plaintiff had not yet been trained, as required, and he
20 had notified defendants he was having trouble using the new
21 system.  The new system was not yet considered to be
22 implemented, related to, including without limitation, because
23 the training was not yet completed.

24      17.  In or about July 2005, plaintiff spoke to Ray
25 Darvisher about his intention to take four weeks of vacation
26 from July 26, 2005 (first day off) to August 23, 2005 (first
27 day back), which was his custom, to New York state to visit

28

6

1  and help take care of his elderly father.  Plaintiff's
2  understanding was that Darvisher served in a lead capacity and
3  administrative capacity for nuclear medicine technologists
4  working at the Mt. Zion facility, and he had customarily in
5  the past spoken to Darvisher to arrange for and obtain any
6  approval necessary to take his vacation.  Darvisher indicated
7  to him it was fine, but to e-mail Sylvia Corpuz (the Associate
8  Chief, who was not located at the Mt. Zion campus) to let her
9  know the dates he would be off on vacation.  Accordingly,
10 plaintiff promptly e-mailed Corpuz, informing her of his
11 upcoming vacation plans. Plaintiff's first work day off was to
12 be Tuesday, July 26, 2005 and he was scheduled to return on
13 August 23, 2005.  His last day at work before leaving on
14 vacation was scheduled to be Friday, July 22, 2005.  When
15 plaintiff was scheduled to work, he customarily would work
16 Tuesdays through Fridays, related to the reasonable
17 accommodation for his disability.

18     18.  Plaintiff followed the steps he had customarily
19 taken previously to notify defendants, and obtain
20 authorization for, his vacation (July 26 [first date off] to
21 August 23 [first day back]).  He notified Ray Darvisher of the
22 planned vacation dates, and notified (by e-mail) Sylvia Corpuz
23 pertaining thereto--the same procedure he had used without
24 problem in the past.  He also filled out the calendar showing
25 he would be gone for the period July 26, 2005 (first day off)
26 to August 23, 2005 (first day back).  He also submitted his
27 time record cards in advance indicating he was taking paid

28

7

Complaint

1  vacation time and would not be present and that he was using
2  paid vacation time instead.  He submitted these time records
3  ahead of time through August 13, intending to fill out the
4  period from August 14 to August 27 when he would return (he
5  was returning on August 23, 2005).  He also wrote a note on
6  these time record cards he was submitting in advance to Sylvia
7  Corpuz, Associate Chief, who was in his supervisory chain of
8  command (although she was not located at the Mt. Zion worksite
9  where plaintiff worked), indicating he had been having
10  problems with the new HBS computerized system regarding
11  filling out time records.  Plaintiff had, in fact, been unable
12  to input his vacation time into the computer because he was
13  having difficulty logging in under the new HBS system, which
14  he still needed further training on.

15      19.    On or about July 28, 2005, Kathy Knoerl, UCSF
16  Medical Center Radiology Operations Director sent an undated
17  letter by mail to plaintiff addressed to his San Francisco
18  home address, indicating in pertinent part that, "Please be
19  advised that it came to my attention that you have been absent
20  from work beginning Monday, July 25, 2005 to the present.  The
21  Department does not have a record of any request from you for
22  vacation or other leave of any type or for this time period.
23  Further, there isn't any approval for this time off from your
24  Manager."  It should be noted that after plaintiff's last
25  working day before vacation (July 22, 2005) plaintiff's next
26  regular workday (if he would not be on vacation) would have
27  been Tuesday, July 26, 2006.  (Because of his disability, and

28

8

Complaint

1  the accommodation for it, he was scheduled to work Tuesdays
2  through Fridays of each week [not Mondays].)    A true and
3  correct copy of the undated letter sent July 28, 2005 by Kathy
4  Knoerl to plaintiff is attached hereto as Exhibit 1.

5      20.   The undated letter sent July 28, 2005 went on to
6  state in pertinent part that, "As a result you have been on
7  unauthorized and unapproved leave since Monday, July 25,
8  2005."    The letter then went on to state further, "UCSF
9  Medical Center cannot and will not tolerate conduct of this
10 type.   Therefore, you are directed to report to work tomorrow
11 at your normally scheduled shift and time.   If you fail to
12 report to work, we will treat your action as job abandonment
13 and will accept this as your resignation from the medical
14 Center pursuant to Article 33, Sections B, C, D, and E of the
15 collective bargaining agreement between the University of
16 California and UPTE."   The undated letter failed to specify
17 what "tomorrow" meant, and in fact if it was mailed July 28,
18 as it was purported to be, it would have arrived most likely
19 sometime on Friday, July 29, and "tomorrow" (if it referred to
20 the next day after arrival of the letter--Saturday) would not
21 have been a scheduled workday for plaintiff.   In any event,
22 when this undated letter sent July 28, 2005 arrived at
23 plaintiff's San Francisco home, plaintiff was in New York on
24 his four-week vacation, and so plaintiff did not see any of
25 this correspondence, including the undated letter sent July
26 28, 2005, until his return from his vacation on or about
27 August 23, 2005, when he reported to work, and then while at

28

9

Complaint

1  work opened his mail to catch up, and realized what had
2  happened.
3      21.  On or about August 8, 2005, Kathy Knoerl, UCSF
4  Medical Center Radiology Operations Director sent plaintiff a
5  letter dated August 8, 2005, a true and correct copy of which
6  is attached hereto as Exhibit 2.  The letter stated in
7  pertinent part, "A letter was sent to your house on Thursday,
8  July 28, 2005 regarding your unapproved absence from the work
9  place. The department did not receive a pre-approval request
10 from you for vacation or other leave of any type.  Therefore,
11 there is no approval for this time off from your Manager.  As
12 you are aware and were informed, your Manager must review and
13 give prior approval for requests for all time off."  The
14 letter went on to state, "UCSF Medical Center cannot and will
15 not tolerate conduct of this type.  Since you have
16 consistently failed to report to work at your normally
17 scheduled shift and time since July 28, 2005 and prior
18 thereto, your termination will be treated as a resignation
19 from the medical Center pursuant to Article 33, Sections B, C,
20 D, and E of the collective bargaining agreement between the
21 University of California and UPTE."  The letter went on to
22 state that, "Resignation papers will be processed regarding
23 your job abandonment from the UCSF Medical Center." Plaintiff
24 did not receive this letter when it arrived at his house, and
25 did not have an opportunity to review it until he picked up
26 his mail from his neighbor who had kept it for him unopened
27 while he was gone on vacation, and then opened it after
28

10

Complaint

1  returning from his vacation and returning to work on or about
2  August 23, 2005.   (The neighbor had given plaintiff the
3  unopened mail which had come in and which the neighbor had
4  been collecting for him in his absence while he was gone on
5  vacation the night before plaintiff returned to work on or
6  about August 23, 2005, when plaintiff had arrived back in town
7  from his vacation, but plaintiff did not open it until the
8  next day, August 23, 2005.)

9      22.   In order for a termination to be treated as a
10 resignation, under Article 33 of the collective bargaining
11 agreement, as aforesaid, there must first be a failure to
12 report to work as scheduled for five (5) consecutive work
13 days.   There also is a requirement in Article 33 that before
14 separating the employee, the University must provide a written
15 notification of its intent to separate the employee, including
16 the reasons for separation; must notify the employee of
17 his/her right to respond to the University within fourteen
18 calendar days thereafter; and must notify the employee that
19 he/she shall have fourteen calendar days from the mailing of
20 such notice to respond to the University prior to his/her
21 separation.   Under Article 33, the employee's response may be
22 in writing or at a meeting with a designated University
23 official, who has the authority to effectively recommend
24 reinstatement of the employee.   Under Article 33, following
25 the employee's timely response, or if no response was provided
26 within fourteen calendar days, the decision of the designated
27 University official is rendered, and this decision is not
28

11

Complaint

1  subject to the grievance and/or arbitration provisions of the

2  collective bargaining agreement.    A true and correct copy of

3  Article 33 of the collective bargaining agreement is attached

4  hereto as Exhibit 3.

5     23.    Plaintiff did not fail to report to work as

6  scheduled for five consecutive days, as he was on vacation

7  until August 23, 2005 (at which time he reported back to work,

8  as scheduled).    He was not scheduled to work on the days on

9  which defendants claimed he was scheduled to work; and in

10  fact, the schedule for the Mt. Zion campus nuclear medicine

11  technologists showed that he was not scheduled to work again

12  after July 22, 2005 until August 23, 2005.

13     24.    Moreover, defendants terminated plaintiff in their

14  August 8, 2005 letter to him, without having given him the

15  rights set forth in Article 33, as aforesaid, of notice of

16  intent to separate him, notice of the right of the affected

17  employee to respond in writing or in a meeting to the

18  University within 14 calendar days thereafter (and before a

19  separation would take place), and notice of the right to have

20  a designated University official who would have the authority

21  to effectively recommend reinstatement of the employee to make

22  a decision on the issue. The aforesaid 14-day notice of right

23  to respond was never mailed to plaintiff.    The University

24  indicated it was terminating him on the same day he received a

25  notice of intent to terminate him (the August 8, 2005 letter),

26  and he never received the formal 14-day notification of

27  opportunity to respond, and decision by designated university

28

12

Complaint

1 official after such a response would be received prior to
2 being terminated on or about August 8, 2005.

3   25.   When plaintiff returned from his vacation on or
4 about August 22, 2005, he collected his unopened mail from a
5 neighbor who had kept it for him when he was gone.

6   26.   He reported to work on August 23, 2005 and worked
7 for a while, at which time he opened his unopened mail the
8 neighbor had given him the night before, and realized he was
9 terminated.  Accordingly, he stopped working and went home.

10   27.   On or about August 26, 2005, plaintiff filed a
11 grievance under the union's collective bargaining agreement
12 alleging he had been wrongfully terminated, that there was a
13 "totally defective 'intent to dismiss' process; lack of just
14 cause and lack of due process; reprisal for participating in
15 grievance procedures. . ."   A true and correct copy of the
16 grievance is attached hereto as Exhibit 4.

17   28.   On or about November 16, 2005, Russ Ritter,
18 Manager, Adjudication and Training for defendants sent a
19 letter containing a response to the grievance to plaintiff's
20 union, denying the grievance, putting forth a rationale
21 supporting the action taken as having been a "resignation/job
22 abandonment" under Article 33, and indicating the "resignation
23 was effected on August 22, 2005."   A true and correct copy of
24 this November 16, 2005 letter is attached hereto as Exhibit 5.

25   29.   Thereafter the matter was taken to arbitration.
26 Arbitrator John Kagel, Esq. ruled on September 1, 2006 that
27 the July 28, 2005 letter and the August 8, 2005 letter did not

28

13

Complaint

1  meet the requirements of Article 33.B.1 in terms of giving the

2  notice required by the Article prior to the employer deciding

3  there had been a resignation/job abandonment.   However, the

4  Arbitrator held that the employee had in effect responded

5  pursuant to the grievance process; and that "... after

6  receiving the response [through the grievance process] it [the

7  employer] reaffirmed its decision to consider the Grievant as

8  abandoning the job. (See Jt. Ex. 6.)   That process cured the

9  notice deficiencies. The Arbitrator, by the Agreement's

10 language, cannot review that determination since he cannot

11 ignore Article 33.B.3 as he would be required to do so." The

12 arbitrator went on to hold that since a decision of job

13 abandonment/resignation made under Article 33 is not grievable

14 under Article 33.B.3, he could not review the decision by the

15 University to consider the Grievant as abandoning the job.  He

16 indicated such issue—the merits of the case and whether in

17 fact the grievant (plaintiff) abandoned his job or not was not

18 grievable under the Union contract, and whether the law was

19 broken in connection with the personnel action in some way or

20 another was not something he was allowed to rule on under the

21 non-grievable provision for resignation/abandonment of job

22 decisions set forth in Article 33.B.3.   The Arbitrator

23 concluded by sting, "The issues raised here must be decided in

24 other forums than arbitration under the Agreement if any are

25 available."   He then wrote, "The determination that William

26 O'Sullivan abandoned his job is not arbitrable under the

27 Parties Collective Bargaining Agreement."   A true and correct

28

14

1  copy of the Arbitrator's decision of September 1, 2006 is
2  attached hereto as Exhibit 6.

3      30. Plaintiff has exhausted all requisite administrative
4  remedies prior to bringing the judicial action herein.

5                        FIRST CAUSE OF ACTION

6  (VIOLATION OF REHABILITATION ACT OF 1973, 29 U.S.C. SECTIONS
7          794 ET SEQ., BROUGHT AGAINST ALL DEFENDANTS)

8      31.  Plaintiff refers to the allegations of paragraphs
9  1-30 of this complaint, and incorporates the same herein by
10 this reference as though set forth in full.

11     32.  Defendants Regents of the University of California
12 and Does I-III qualify as a "program or activity" receiving
13 Federal financial assistance, and are otherwise subject to the
14 disability  discrimination  provisions  set  forth  in  the
15 Rehabilitation Act of 1973, 29 U.S.C. Sections 794 et seq.

16     33.  Plaintiff suffered from a disability as covered by
17 the Rehabilitation Act of 1973, 29 U.S.C. Sections 794 et seq.
18 Additionally, he engaged in protected activity covered and
19 made redressable by the Rehabilitation Act of 1973, 29 U.S.C.
20 Sections 794 et seq., including, without limitation, making
21 requests for reasonable accommodations for disability, and
22 opposing  disability  discrimination  and  failure  to  make
23 reasonable accommodation for disability.

24     34.  Defendants Regents of the University of California
25 and Does I-III violated the Rehabilitation Act of 1973,
26 including, without limitation, 29 U.S.C. Sections 794 et seq.
27 by  including,  without  limitation,  discriminating  against

28                            15

1  plaintiff based on his disability, based on his making
2  requests for reasonable accommodations for his disability,
3  and/or based on his opposing disability discrimination and
4  failure to make reasonable accommodation for disability, by
5  including without limitation, terminating him involuntarily
6  from his employment (and characterizing the termination as
7  alleged resignation/job abandonment).

8      35.  As a proximate result of defendants' wrongful
9  conduct, as aforesaid, plaintiff has suffered, and continues
10  to suffer, economic loss, in an amount to be shown according
11  to proof.

12      36.  As a further proximate result of defendants'
13  wrongful conduct, as aforesaid, plaintiff has suffered, and
14  continues to suffer, emotional distress, mental anguish,
15  shame, embarrassment, humiliation, pain and suffering,
16  physical injury, and injury to reputation, in an amount to be
17  shown according to proof.

18      37.  Plaintiff seeks all remedies entitled to him under
19  the Rehabilitation Act of 1973, 29 U.S.C. Sections 794 et
20  seq., including, without limitation, reinstatement, back pay
21  plus interest, appropriate adjustment of pay and benefits, and
22  appropriate correction and expungement of his personnel
23  record.

24      38.  Plaintiff has had to hire attorneys to prosecute
25  the matter herein, and is entitled to an award of reasonable
26  attorneys' fees and costs, according to proof.

27      WHEREFORE, plaintiff prays judgment against defendants

28                                16

_____
Complaint

1  and each of them as set forth below.

2  <div align="center">SECOND CAUSE OF ACTION</div>

3  (CAUSE OF ACTION FOR PETITION FOR WRIT OF ADMINISTRATIVE

4  MANDAMUS AND/OR MANDAMUS, ALONG WITH DAMAGES (C.C.P. SECTIONS

5  1094.5, 1095, AND 1085, BROUGHT AGAINST DEFENDANT AND

6  RESPONDENT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA)

7      39.  Plaintiff refers to the allegations of paragraphs

8  1-30 of this complaint, and incorporates the same herein by

9  this reference as though set forth in full.

10      40.  Plaintiff/petitioner William O'Sullivan petitions

11  this Court for a writ of mandate under Code of Civil Procedure

12  Section 1094.5, directed to defendant/respondent The Regents

13  of the University of California, and seeks damages incidental

14  to the writ, under Code of Civil Procedure Section 1095.

15  Alternatively, plaintiff seeks a writ of mandate under Code of

16  Civil Procedure Section 1085, if the Court views that section

17  as the appropriate section to proceed upon.

18      41.  Plaintiff/petitioner William O'Sullivan is a former

19  employee of defendant/respondent The Regents of the University

20  of California, who was discharged from his employment

21  effective on or about August 22, 2005.  Said discharge was

22  alleged by defendant/respondent to be a resignation/job

23  abandonment. Defendant/respondent The Regents of the

24  University of California is a statewide administrative agency

25  possessing adjudicatory powers derived from the California

26  Constitution as to the problems and purposes of its personnel.

27      42.  At all times mentioned herein, defendant/respondent

28

<div align="center">17</div>

Complaint

1  has been and is now the entity charged with conducting

2  evidentiary hearings and rendering final decisions in internal

3  appeals brought by its employees contesting adverse personnel

4  actions, including termination based on alleged

5  resignation/job abandonment.

6      43.  Plaintiff/petitioner William O'Sullivan exhausted

7  all available administrative remedies required to be pursued

8  by him which were made available to him.

9      44.  Plaintiff and petitioner William O'Sullivan had a

10  property interest in his employment, which he could not be

11  deprived of without being afforded pre-removal due process

12  rights and/or post-removal due process rights and/or which he

13  could not be deprived of if there were other defects in his

14  termination.

15      45.  Defendant and respondent The Regents of the

16  University of California, in connection with its termination

17  of plaintiff/petitioner William O'Sullivan, proceeded in

18  excess of its jurisdiction and/or prejudicially abused its

19  discretion, in that: (A) It failed to proceed in the manner

20  required by law including, without limitation, in that (1) it

21  denied plaintiff and petitioner his pre-removal due process

22  rights, and terminated him effective on or about August 22,

23  2005, including without limitation without following the

24  procedures set forth in Article 33(B) of the applicable

25  collective bargaining agreement as having to be followed prior

26  to removing someone because of job abandonment, including

27  without limitation in that plaintiff/petitioner was not

28

18

1   notified of the right to respond within 14 calendar days, and

2   the termination of him for resignation/job abandonment was put

3   into effect prior to a response by plaintiff/petitioner and

4   prior to a designated University official with the authority

5   to effectively recommend reinstatement of the employee making

6   any decision after due consideration of any response by the

7   employee; (2) it initiated proceedings to terminate

8   plaintiff/petitioner based on job abandonment under Article

9   33(B) prior to plaintiff/petitioner failing to report to work

10  as scheduled for five consecutive work days, as required by

11  Article 33(B); (3) it terminated plaintiff/petitioner based on

12  job abandonment under Article 33(B) prior to

13  plaintiff/petitioner failing to report to work as scheduled

14  for five consecutive work days, as required by Article 33(B);

15  (4) it denied plaintiff and petitioner his post-removal due

16  process rights; (e) it invoked job abandonment as a reason to

17  discipline and terminate plaintiff/petitioner even though

18  plaintiff/petitioner had not failed to report to work as

19  scheduled for five consecutive days, which is a prerequisite

20  for invoking the section; (f) it denied plaintiff/petitioner

21  due process and equal protection rights in that he was

22  penalized for not using a new system to report vacation time

23  when the system had not yet been instituted, and training of

24  all persons (including plaintiff/petitioner) had not yet been

25  completed; (g) it terminated plaintiff/petitioner and took

26  adverse action against plaintiff/petitioner based on his

27  exercising free speech rights, and complaining of

28

19

Complaint

1 discrimination, retaliation, and working conditions; (h) it
2 did not appoint a proper designated University official to
3 give a response to, hold a meeting with, have the authority to
4 effectively recommend reinstatement of the employee, and
5 otherwise provide sufficient due process; (i) it denied
6 plaintiff/petitioner his equal protection rights by singling
7 him out and treating him differently, in an arbitrary fashion,
8 and depriving him of his job and livelihood in an arbitrary
9 fashion; (j) it failed to follow the rules, regulations,
10 policies, and procedures applicable to the situation in
11 depriving plaintiff of his property interest and employment
12 and livelihood; (k) it acted in a capricious and arbitrary
13 manner, and deprived plaintiff/petitioner of his due process
14 and equal protection rights; (l) it failed to afford
15 plaintiff/petitioner fairness and impartiality of treatment;
16 (m) it failed to give plaintiff and petitioner an adequate
17 opportunity to respond to the charges upon which the adverse
18 personnel decision was being based; and (n) it put his
19 termination from employment into effect before the time had
20 run for him to respond, before giving him adequate notice to
21 respond, and before considering his response and making a
22 decision having taken his response into account. Defendant and
23 respondent also proceeded in excess of its jurisdiction and/or
24 prejudicially abused its discretion in that its decision was
25 not supported by the evidence before it in making its
26 decision.  Defendant and respondent also proceeded in excess
27 of its jurisdiction and/or prejudicially abused its discretion
28

Complaint

1  in that it rendered the adverse decision without having made
2  sufficient findings on the underlying pertinent issues.
3  Defendant and respondent also proceeded in excess of its
4  jurisdiction and/or prejudicially abused its discretion in
5  that it did not inform plaintiff/petitioner of the real
6  reason(s) it was terminating him, or give him an opportunity
7  to respond to said real reason(s). Defendant and respondent
8  also proceeded in excess of its jurisdiction and/or
9  prejudicially abused its discretion in that it treated the
10 matter as an Article 33 matter under the collective bargaining
11 agreement (resignation/job abandonment) instead of an Article
12 6 matter under the collective bargaining agreement
13 (discharge), when there was insufficient evidence to proceed
14 on the matter as an Article 33 matter, and in not giving
15 plaintiff and petitioner the due process protections which
16 would have been provided by proceeding under Article 6 instead
17 of Article 33.

18    46. Plaintiff/petitioner has exhausted the available
19 administrative remedies required to be pursued by him. The
20 decision of the Arbitrator of September 1, 2006, a copy of
21 which is attached hereto as Exhibit 6, was the final step of
22 the administrative remedy available to plaintiff/petitioner.
23 The decision of the Arbitrator sidestepped deciding the issues
24 in dispute, as aforesaid, by holding that, "The determination
25 that William O'Sullivan abandoned his job is not arbitrable
26 under the Parties Collective Bargaining Agreement." The
27 Arbitrator also stated, "The issues raised here must be
28

21

Complaint

1  decided in other forums than arbtration under the Agreement if

2  any are available." The Arbitrator's ruling should not be

3  interpreted as somehow foreclosing review by this Court of the

4  issues in this case which constitute a prejudicial abuse of

5  discretion, acting in excess of jurisdiction, and other

6  defects, reviewable under C.C.P. Section 1094.5, as previously

7  set forth above (see paragraph 51, above), since the

8  Arbitrator's decision itself indicates that

9  defendant/respondent's determination that plaintiff/petitioner

10  abandoned his job was not arbitrable under the Parties'

11  Collective Bargaining Agreement (as per Article 33), and that

12  the issues raised must be decided in other forums than

13  arbitration under the Agreement if any are available (which

14  they are, this Court being an available and proper forum to

15  bring these issues for review under C.C.P. Section 1094.5,

16  which issues are detailed above (see, e.g., paragraph 51,

17  above). Alternatively, any use of the arbitrator's decision

18  by defendant/respondent as a shield against reinstating

19  plaintiff/petitioner and providing him with other relief, as

20  requested herein, would be a further prejudicial abuse of

21  discretion reviewable under C.C.P. Section 1094.5 herein, for

22  reasons the same and/or similar to and/or related to the

23  reasons set forth in paragraph 51, above. Additionally, even

24  if the Arbitrator ruled that under Article 33.B.3, the

25  determination by defendant/respondent that

26  plaintiff/petitioner abandoned his job was not arbitrable or

27  reviewable in arbitration under the Agreement and would have

28

22

Complaint

1   to be reviewed and decided in another forum rather than in

2   arbitration under the Agreement, the determination by

3   defendant/respondent that plaintiff/petitioner had abandoned

4   his job, which the Arbitrator refers to as having been

5   procedurally made by defendant/respondent after

6   plaintiff/petitioner had submitted a response in the grievance

7   proceedings, would not have justified effectuating his

8   termination as a resignation/job abandonment on August 22,

9   2005 (the date the "resignation" was referred to as being

10  "effected" in the November 16, 2005 letter written by Russ

11  Ritter, Exhibit 5), since plaintiff/petitioner had not filed

12  his grievance by August 22, 2005, nor had the 14 day period

13  in which he had to submit his response after receiving

14  notification of his rights passed by that time, as required

15  under Rule 33. Accordingly, any abandonment of job could not

16  have taken place by that time (August 22, 2005), because any

17  process attempting to cure the notice deficiencies (response

18  by plaintiff/petitioner and consideration by

19  defendant/respondent of such a response before deciding

20  whether job abandonment had occurred) had not taken place by

21  that time. Accordingly, even assuming _arguendo_ there were no

22  other due process and/or other violations (which there in fact

23  were), the earliest any "resignation" or "abandonment" could

24  have taken effect would have been November 16, 2005 (Exhibit

25  5)--when an alleged decision by defendant/respondent after

26  alleged consideration of plaintiff/petitioner's response was

27  rendered--not August 22, 2005 (which was before any alleged

28

23

1 curing of the notice deficiencies took place); and the failure
2 to reinstate and provide other relief to plaintiff/petitioner
3 for the period August 22, 2005 to November 16, 2005 would in
4 and of itself be an additional violation of due process rights
5 and prejudicial abuse of discretion.  Additionally,
6 defendant/respondent further prejudicially abused its
7 discretion in that it did not cure the original notice
8 deficiencies even by November 16, 2005, nor did it belatedly
9 provide other due process and equal protection rights and
10 other required safeguards it had not provided, as previously
11 referred to herein, at any time, or cure any other prejudicial
12 abuse of discretion it committed, as previously referred to
13 herein, at any time.

14　　　47.  Plaintiff/petitioner does not have a plain, speedy,
15 and adequate remedy in the ordinary course of law.

16　　　48.  Plaintiff/petitioner has relevant evidence to offer
17 which he will offer at the hearing on this petition.   A
18 hearing was not conducted on the issues pertinent to deciding
19 this    case,    because    the    decision    to    characterize
20 plaintiff/petitioner as having abandoned his job was found not
21 grievable under the provisions of Article 33 of the collective
22 bargaining agreement (and accordingly evidence pertaining to
23 the issue of whether or not in fact he was properly terminated
24 or had in fact abandoned his job was not admissible and was
25 not considered), and because there was no hearing held other
26 than the limited hearing held before the arbitrator on the
27 limited issue he addressed, which did not address the issues

28

24

Complaint

1  being raised herein (which the arbitrator himself pointed out

2  in his decision, a copy of which is attached hereto as Exhibit

3  6).

4      49.  Plaintiff/petitioner has been denied the use and

5  enjoyment of his property interest in, and rights to,

6  employment by defendant/respondent, from which he has been

7  unlawfully precluded by defendant/respondent.

8      WHEREFORE, plaintiff and petitioner William O'Sullivan

9  hereby prays judgment against defendants and respondents each

10  of them as follows:

11      1.  On the First Cause of Action, for general damages,

12  for special damages, and for an award of reasonable attorneys'

13  fees, according to proof.

14      2.  On the Second Cause of Action, that a peremptory

15  writ of mandate issue directed to defendant and respondent

16  Regents of the University of California, and compelling it to

17  set aside its decision terminating plaintiff/petitioner

18  William O'Sullivan, that it reinstate the plaintiff/petitioner

19  to the position he held of a senior nuclear medicine

20  technologist, that it restore to plaintiff/petitioner all back

21  pay and benefits that he would have received but for the

22  termination from the date of termination until such date as he

23  is reinstated, that it pay to plaintiff/petitioner interest on

24  the back pay at the full legal rate, such interest accruing

25  from the date each paycheck or other pay item disbursement

26  would have been received had petitioner not been discharged,

27  that it remove from his personnel file or any other file used

28

                                25

1  for personnel purposes documentation relating to the incident

2  adjudicated in this petition, and refrain from using the

3  incident adjudicated in his petition in any way adverse to

4  petitioner; and for any other damages, according to proof.

5      3.  For costs of suit; and

6      4.  For such other and further relief as this Court

7  deems just and proper.

8      DATED:  July 27, 2007.

9                              LOUIS A. HIGHMAN
                               BRUCE J. HIGHMAN
10                             LAW OFFICES OF HIGHMAN, HIGHMAN
                                  & BALL
11

12                         By
                               _____
13                             Attorneys for Plaintiff and
                               Petitioner William O'Sullivan

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

_____

Complaint



University of California
San Francisco

**UCSF**

Medical Center


William O'Sullivan
145 Lincoln Way Apartment #4
San Francisco, CA 94122

Dear Bill,

Please be advised that it came to my attention that you have been absent from work beginning Monday, July 25, 2005 to the present. The Department does not have a record of any request from you for vacation or other leave of any type or for this time period. Further, there isn't any approval for this time off from your Manager. As I'm sure you are aware, your Manager must review and give prior approval for requests for all time off.

The only reason the Department Manager is even aware of your absence is because your co-worker called the department seeking a replacement. He indicated that when you informed him of your intentions, he reminded you that you needed to receive prior approval from your Manager. As a result you have been on unauthorized and unapproved leave since Monday, July 25,2005.

UCSF Medical Center cannot and will not tolerate conduct of this type. Therefore, you are directed to report to work tomorrow at your normally scheduled shift and time. If you fail to report to work, we will treat your action as job abandonment and will accept this as your resignation from the medical Center pursuant to Article 33, Sections B, C, D and E of the collective bargaining agreement between the University of California and UPTE.

Sincerely,

Kathy Knoerl
UCSF Medical Center
Radiology Operations Director


Cc: Department File
    Labor Relations

EXHIBIT 1



University of California
San Francisco

Medical Center

UCSF Medical Center
Human Resources
350 Parnassus Ave, Suite 210
San Francisco, CA
94143-0914
Tel: 415-514-4689
Fax: 415-514-4912

## PROOF OF SERVICE

### Delivery

I declare that I am over the age of eighteen years and not a party to the within entitled cause. My address is 505 Parnassus.

On July 28, 2005 I served the attached letter to:

William O'Sullivan

I declare, under the penalty of perjury, that the foregoing is true and correct and that this declaration was executed on July 28, 2005, at UCSF Radiology Department, 505 Parnassus, San Francisco.

*Susana Vega*
(Print name here)
MSO Radiology

*S Vega*
(Signature)



University of California
San Francisco



**Medical Center**

August 8, 2005

William O'Sullivan
145 Lincoln Way Apartment #4
San Francisco, CA 94122

Dear Bill,

A letter was sent to your house on Thursday, July 28, 2005 regarding your unapproved absence from the work place. The department did not receive a pre-approval request from you for vacation or other leave of any type. Therefore, there is no approval for this time off from your Manager. As you are aware and were informed, your Manager must review and give prior approval for requests for all time off.

UCSF Medical Center cannot and will not tolerate conduct of this type. Since you have consistently failed to report to work at your normally scheduled shift and time since July 28, 2005 and prior thereto, your termination will be treated as a resignation from the medical Center pursuant to Article 33, Sections B, C, D and E of the collective bargaining agreement between the University of California and UPTE.

Resignation papers will be processed regarding your job abandonment from the UCSF Medical Center.

Sincerely,

Kathy Knoerl
UCSF Medical Center
Radiology Operations Director

Cc: Department File
    Labor Relations

EXHIBIT 2

# UNIVERSITY OF CALIFORNIA

## AND

## UNIVERSITY PROFESSIONAL AND TECHNICAL EMPLOYEES (UPTE)

## AGREEMENT

## HEALTH CARE PROFESSIONALS UNIT

July 1, 2003 – June 30, 2006

## ARTICLE 31
## RECLASSIFICATION REVIEW

A. An employee may request a review of the classification of their position. The review shall be based on the employee's job description, as approved by their supervisor. Requests for reclassification shall be processed by the University office responsible for reclassification review.

B. If the employee makes the request for review of a classification and the supervisor fails to respond within 30 calendar days, the employee may forward the request to the designated University office responsible for classification review.

C. The salary adjustment, resulting from a reclassification, if any, shall be retroactive to the first day following the date on which the request to the designated University office was received.

D. The University's decision to reclassify or not to reclassify is not subject to either the grievance or arbitration procedures.

E. An employee may request a review of a decision denying a reclassification. The request for a review shall be made in writing to the Human Resources Office within 30 calendar days of the date on which the reclassification decision was issued. The request shall state the basis upon which the employee is requesting a review. The result of the review shall be issued in writing by a representative of the Human Resources Office. The representative who issues the second decision may not be the same individual who performed the initial review.

## ARTICLE 32
## RELEASE TIME FOR BARGAINING

A. UPTE shall designate as a bargaining team member not more than one active status University HX-Unit employees per medical center, one from UCSF and one from the HX Unit. UPTE shall provide in writing the names of the designated permanent members to the Office of Labor Relations at least 30 calendar days prior to the first scheduled bargaining session. In the event any designated member is to be permanently replaced, the name of the permanent replacement shall be communicated in writing to the Office of Labor Relations. The Office of Labor Relations shall acknowledge in writing the newly designated permanent replacement, and inform the appropriate work location. Such notification of a permanent replacement shall be made to the Office of Labor Relations two workweeks prior to the next bargaining session to be attended by the replacement employee. Designated team members who are members of the System-wide Unit may be released from their work assignments without loss of straight-time pay to attend scheduled bargaining sessions. Alternate or substitutes for a designated team members may be permitted when UPTE has provided the University with the name and work location of the replacement at least two weeks in advance of the date of the change, unless the parties agree to a shorter notice period.

B. No more than a total of six HX-Unit employees shall be in without-loss-of-straight-time pay and benefits status for attendance at scheduled bargaining sessions, including reasonable travel time to attend bargaining sessions. Without-loss-of-straight-time-pay status shall be provided only for bargaining sessions, and only for days which the member would have been scheduled to work, had the member not been released from his/her work assignments to attend bargaining sessions. In no case shall the member not been released from his/her work assignments to attend scheduled bargaining session in which any of the designated union bargaining team members are in without-loss-of-straight-time pay status shall not exceed the designated team member's actual scheduled straight-time hours per week, nor day of a scheduled bargaining session and shall not exceed 40 hours per week. Time in without-loss-of-straight-time status for the purpose of bargaining shall not count in the calculation of overtime, and will not result in any double payment for

used for trial employment shall not be designated as career positions, except that an employee shall maintain benefits to the extent permitted by benefit plan rules.

the hours in such status. Deviation from this paragraph may be made only by mutual agreement of the parties on a case-by-case basis.

C. Bargaining sessions are defined as the pre-scheduled face-to-face meetings, and related caucuses during meeting days, for the purpose of negotiating terms and conditions of an Agreement. If there is actually a face-to-face meeting on a scheduled meeting day as the result of the University's scheduling to appear at the bargaining table, or the University agrees that a full-day union bargaining team caucus is necessary to the bargaining process, the University may designate a day without a face-to-face meeting as a "bargaining session."

D. An employee designated as an HX-Unit bargaining team member shall provide his/her supervisor with written notice of their intent to attend scheduled bargaining sessions as soon as practicable following the scheduling of bargaining sessions. A bargaining team representative may be denied release time for bargaining, either in paid or unpaid status, if his/her supervisor is not provided at least 14 calendar days prior notice of his/her need for release time, unless the parties agree to a shorter notice period.

E. UPTE shall provide an attendance roster at the end of each bargaining session.

F. Reasonable travel time means actual travel, via the most expeditious method of transportation available, to and from scheduled bargaining sessions for the designated employees.

G. Attendance at a bargaining session at scheduled bargaining sessions shall constitute fulfillment of the employee's work obligation for that day.

H. The University shall make a good faith effort to modify a bargaining team member's work schedule in order to accommodate his/her participation in bargaining sessions.

## ARTICLE 33
## RESIGNATION/JOB ABANDONMENT

A. RESIGNATION

1. Employees who voluntarily separate from employment with the University, other than retirement, are considered to have resigned their employment with the University.

2. Upon the employee's submission of a written notice of resignation there shall be no withdrawal or rescinding of the resignation except by the written mutual agreement of the University and the employee.

3. In the event an employee provides an oral notice of resignation, she may rescind such notice within two scheduled work days following the oral notice. If such oral notice is not rescinded within the two (2) work-day limit, there shall be no withdrawal or rescinding of the resignation except by the written mutual agreement of the University and the employee.

4. With the exception of retirement, the final paycheck (including earnings to date, overtime, and vacation hours) shall be paid to the employee in a timely manner normally within 72 hours and in conformance with applicable sections of the Labor Code. Retirement compensation shall be provided pursuant to retirement plan regulations.

B. JOB ABANDONMENT

Failure to report to work as scheduled for five (5) consecutive work days may be treated by the University as an employee's job abandonment resulting in his/her resignation.

1. In the case of job abandonment, the University shall provide the employee with written notification of its intent to separate her/him. This notification shall include the reasons for the separation, the employee's

right to respond to the University within fourteen (14) calendar days, and a Proof of Service. The notification shall be sent to the employee's last known mailing address.

2. The employee shall have fourteen (14) calendar days from the mailing of such notice to respond to the University prior to her/his separation. The response may, at the option of the employee, be in writing or may be a meeting with a University official. The official must have the authority to effectively recommend reinstatement of the employee.

3. Following the employee's timely response, or if no response was provided within fourteen (14) calendar days, the decision of the designated University official is not subject to the grievance and/or arbitration provisions of this Agreement.

### ARTICLE 34
### SEVERABILITY

If any provision of this Agreement is found to be contrary to law by a court of competent jurisdiction, such provision shall be of no force or effect, but the remainder of this Agreement shall continue in full force and effect. The parties shall meet and confer in good faith with respect to any provision found to be in contravention of the law in order to agree on a substitute provision.

### ARTICLE 35
### SHIFT DIFFERENTIAL

**A. GENERAL PROVISIONS**

Eligible employees assigned to an evening or night shift shall be paid a shift differential for all hours including overtime which are worked, in accordance with the following provisions. Shift differential rates by location are listed in Appendix A. Work that is scheduled during the evening or night hours on the basis of convenience to the employee shall not be considered an assigned evening or night shift for the purpose of receiving shift differential.

**B. EVENING AND NIGHT SHIFTS**

An evening or night shift differential shall be paid for all hours of a shift when four hours or more of a shift are worked after 5:00 p.m. and before 8:00 a.m.

**C. DAY SHIFT EMPLOYEE ELIGIBILITY FOR SHIFT DIFFERENTIALS**

An employee regularly assigned to a day shift of eight hours or longer shall be paid a shift differential for overtime hours when:

1. The overtime hours are worked after 6:00 p.m. and before 6:00 a.m.

2. The total overtime hours in one 24 hour day are equal to at least one-half (1/2) the number of regular hours in the employee's day shift, and

3. The overtime is not compensated at a premium rate.

**D. TEMPORARY ASSIGNMENT TO SHIFT WITHOUT A DIFFERENTIAL**

When an employee who usually works on an evening or night shift is temporarily assigned to a day shift for a period of four working days or less, the employee shall continue to receive any shift differential. A temporary change of four working days or less in shift assignment initiated by the employee is not covered by this provision.

**E. SHIFT DIFFERENTIAL WHEN ON PAID LEAVE**

The shift differential shall be included in payments for all types of paid leave, provided that to the employee would have been expected to work that shift or shifts if the employee were not on paid leave.

**F. SHIFT ASSIGNMENTS TO TITLES WITHOUT ESTABLISHED SHIFT DIFFERENTIAL RATES**

Prior to assigning a shift differential rate to a classification that does not have an established rate, the University and UPTE must negotiate the shift differential rate to be assigned to that classification.

**G. LAWRENCE BERKELEY NATIONAL LABORATORY**

Policies, procedures, definitions, qualifications, covered hours and rates in effect at PERB's certification of UPTE-CWA Local 9119, on September 15, 1997, shall remain in effect for employees at the Lawrence Berkeley National Laboratory and shall supersede the provisions of this article where in conflict.

### ARTICLE 36
### SICK LEAVE

**A. ACCUMULATION OF SICK LEAVE CREDIT**

1. After a campus implements the Factor Accrual System, an eligible employee shall earn sick leave credit at the rate of .04154 hours per hour on pay status, including paid holiday hours but excluding all paid overtime hours.

2. For campuses retaining the Table Accrual System, an eligible employee shall earn sick leave credit at the rate of eight hours per month for full-time employment. Sick leave credit shall be earned monthly, as set forth in the Sick Leave Credit Table below, for all hours on pay status, up to one-half (1/2) of the full-time working hours of the month but less than full-time.

3. Until a campus implements the Factor Accrual System, current accrual practices will remain in place.

**SICK LEAVE CREDIT TABLE**
**Number of Hours on Pay Status**

| 160-Hour Month Earned | 168-Hour Month | 176-Hour Month | 184-Hour Month | Percent of time of Pay Status | Hours of Sick Leave |
|---|---|---|---|---|---|
| 0 - 79 | 0 - 83 | 0 - 87 | 0 - 91 | 0 - 49 | 0 |
| 80 - 89 | 84 - 94 | 88 - 98 | 92 - 103 | 50 - 56 | 4 |
| 90 - 109 | 95 - 115 | 99 - 120 | 104 - 126 | 57 - 68 | 5 |
| 110 - 129 | 116 - 137 | 121 - 142 | 127 - 149 | 69 - 80 | 6 |
| 130 - 149 | 138 - 157 | 143 - 164 | 150 - 172 | 81 - 93 | 7 |
| 150 - 160 | 158 - 168 | 165 - 176 | 173 - 184 | 94 - 100 | 8 |

* Hours on pay status, including paid holiday hours, but excluding all paid overtime hours.

4. An employee must be on pay status for at least one-half (1/2) of the working hours of a month or quad-weekly cycle to earn sick leave credit for that month or quad-weekly cycle. Time on pay status in excess of a full-time work schedule does not earn sick leave credit. Sick leave is earned during leave with pay. For the purposes of this Agreement, a quad-weekly cycle is defined as two bi-weekly pay periods designated by the University to be considered as one unit for the purpose of leave accrual.

5. For employees on either system, earned sick leave for each month or quad(-weekly) cycle is credited on the first day of the following month or

MC52-3x-00

| UPTE HEALTH CARE PROFESSIONALS UNIT GRIEVANCE FORM | Allegations of a violation of the Health Care Professionals Agreement in effect between the University and UPTE must be filed in on this form. See your Agreement for details regarding the filing of a grievance. PLEASE PROVIDE THE INFORMATION REQUESTED IN ACCORDANCE WITH ARTICLE 8, GRIEVANCE PROCEDURE OF THE HEALTH CARE PROFESSIONALS UNIT AGREEMENT. |
|---|---|

**GRIEVANT'S NAME**
WILLIAM O'Sullivan

**NAME OF GRIEVANT'S IMMEDIATE SUPERVISOR**
Sylvia Corpuz

**CAMPUS / MEDICAL CENTER / LABORATORY**

**DEPARTMENT / DIVISION**
Nuclear Medicine

**WORK TELEPHONE**
N/A

**EMPLOYEE CLASSIFICATION TITLE**
Senior Nuclear MedTech

**NON-WORK ADDRESS TO WHICH CORRESPONDENCE MAY BE SENT TO GRIEVANT** 145 Lincoln, #4
SF CA 94122

**EMPLOYEE EMPLOYMENT STATUS** X Career/Regular ___ Probationary ___ Full Time ___ Casual/Temporary ___ Per Diem ___ Part Time (0.8)

**GRIEVANT'S NORMAL HOURS OF WORK** 730AM - 230 PM

IF REPRESENTED IN THIS GRIEVANCE, PROVIDE THE FOLLOWING:

**REPRESENTATIVE'S NAME**
Nino Maida

**REPRESENTATIVE'S ORGANIZATION** UPTE-CWA

**REPRESENTATIVE'S TELEPHONE NUMBER**
415-412-8546

**REPRESENTATIVE'S NON-WORK ADDRESS, CITY, STATE, ZIP**
1498-9th Ave, SF CA 94122-3607

RECEIVED

**TYPE OF GRIEVANCE:**

X INDIVIDUAL ___ GROUP (LIST ALL GRIEVANTS)

___ UNION (MUST BE SIGNED BY THE PRESIDENT OR DESIGNEE)

**SPECIFIC ARTICLE(S) & SECTION(S) OF THE CONTRACT ALLEGED TO BE VIOLATED:**
33B, 6, 8

AUG 29 2005

UCSF MEDICAL CENTER
LABOR RELATIONS

**DATE OF ACTION CAUSING GRIEVANCE**
July 28 2005

**DATE OF INFORMAL DISCUSSION WITH SUPERVISOR**
___/___/___

**DATE OF INFORMAL RESPONSE**
___/___/___

**ALLEGED VIOLATION OF AGREEMENT** TOTALLY DEFECTIVE "INTENT TO DISMISS" PROCESS; LACK OF JUST CAUSE AND LACK OF DUE PROCESS; REPRISAL FOR PARTICIPATING IN GRIEVANCE PROCEDURES (SEE ATTACHMENTS).

**REMEDY REQUESTED** MAKE WHOLE IN EVERY WAY. PROVIDE MANAGEMENT TRAINING TO SYLVIA CORPUZ. PROVIDE EFFECTIVE TRAINING FOR ALL EMPLOYEES AFFECTED BY THE NEW COMPUTER BASED EMPLOYEE TIME SCHEDULING AND REPORTING SYSTEM. REINSTATE MR. O'SULLIVAN TO HIS JOB EFFECTIVE IMMEDIATELY.

**GRIEVANT'S AND/OR REPRESENTATIVE'S SIGNATURE**
Nino Maida

**DATE**
Aug 26, 2005

SEE:
[ LARGE ATTACHMENT ]

EXHIBIT A

RECEIVED

NOV 1 4 05

FAXED OR MAILED 1/25

# UNIVERSITY OF CALIFORNIA

BERKELEY · DAVIS · IRVINE · LOS ANGELES · MERCED · RIVERSIDE · SAN DIEGO · SAN FRANCISCO    SANTA BARBARA · SANTA CRUZ

OFFICE OF THE SENIOR VICE PRESIDENT —
BUSINESS AND FINANCE

OFFICE OF THE PRESIDENT
300 Lakeside Drive
Oakland, California 94612-3550
November 16, 2005

Mr. Jelger Kalmijn, President
UPTE–CWA 9119
2510 Channing Way, Suite 11
Berkeley, California 94704

RE: Response to UPTE's Appeal to Step 3:  William O'Sullivan Grievance, UCSF Medical Center,
Systemwide Number SF-HX-48-05, Campus Number MC-52-HX-05

Dear Mr. Kalmijn:

The Office of Labor Relations has discussed the above-referenced grievance with officials at the San Francisco Medical Center and has reviewed the relevant documents and correspondence.

The above-referenced grievance was dated August 26, 2005 and received by the UCSF Medical Center Labor Relations office on August 29, 2005, and alleged that Mr. O'Sullivan was dismissed by the University on August 22, 2005[1] in violation of the labor agreement, Articles 6 – Corrective Action, Discipline and Discharge, 8 – Grievance Procedure, and 33 – Resignation/Job Abandonment Section B.
The requested remedy is to reinstate, make the employee whole and associated remedies.

As demonstrated in the record, Mr. O'Sullivan did not show up for work on July 25, 2005. As noted in the grievance, Mr. O'Sullivan appears to have believed he was on approved leave from that date, but this came as news to his supervisor, who was not aware of any request, had not granted approval, and was not aware of his absence until July 28, 2005, when a co-worker inquired about getting a substitute for his absent colleague. The Supervisor promptly sent a letter to Mr. O'Sullivan, notifying him of his absentee status and ordering him back to work. The letter further informed Mr. O'Sullivan that if he did not comply the University will treat his job abandonment as a resignation under Article 33.

Mr. O'Sullivan did not return to duty as ordered and did not reply to the July 28, 2005 letter or to the subsequent notice dated August 8, 2005, which informed him of the determination to process his absence as a resignation. In the absence of any response at all, the resignation was effected on August 22, 2005.

Under these circumstances, Article 6 (discipline) does not apply at all. This was not a disciplinary action, but a resignation/job abandonment under Article 33. The reliance on the process applicable to Article 6 is inapposite. Therefore, this element of your grievance is denied. Similarly, the speculation concerning possible retaliation for filing one or more previous grievances (a violation of Article 8) is

---

[1] The date of the grievable event was recorded as July 28, 2005 (the date of the notice of his unapproved absence status and directive to return to duty immediately) on the grievance form. That would make this grievance, filed August 29, untimely. However, the effective date of the action is the appropriate event date and the grievance will be thus accepted as timely.

EXHIBIT 5

Jelger Kalmijn
November 16, 2005
Page 2 of 2

without foundation inasmuch as UPTE has failed to provide any evidence at all to support the assertion. Consequently, this element is denied also.

As for Article 33, the record demonstrates that Mr. O'Sullivan was twice notified of the consequences for failing to return to duty as directed and that the matter would be treated as job abandonment and processed as a resignation. Mr. O'Sullivan did not reply or otherwise communicate his desire to keep his job. Under these circumstances, the University properly effected his resignation as provided under Article 33 Section B after a 14 day period. As specified in Article 33 Section B.3, such action is not subject to the grievance or arbitration procedure. Therefore, the remaining element of your grievance is ineligible for processing under the grievance procedure.

Accordingly, the grievance and all requested remedies are denied. Please note, if UPTE pursues this matter to arbitration, the University will insist on an arbitrability hearing separate from and prior to a hearing, if any, on the merits.

Sincerely,

Rus Ritter
Manager, Adjudication and Training

Enclosure (Grievance Form and POS)

cc:     Associate Director Cieszkiewicz
        Manager Frates
        LR Consultant Broderick
        University LR Consultant Ernst
        File

10/26/2005 04:49 FAX

| UPTE HEALTH CARE PROFESSIONALS UNIT GRIEVANCE FORM | Allegations of a violation of the Health Care Professionals Agreement in effect between the University and UPTE must be filled in on this form. See your Agreement for details regarding the filing of a grievance. PLEASE PROVIDE THE INFORMATION REQUESTED IN ACCORDANCE WITH ARTICLE 8, GRIEVANCE PROCEDURE OF THE HEALTH CARE PROFESSIONALS UNIT AGREEMENT. |
|---|---|

**GRIEVANT'S NAME**
WILLIAM O'Sullivan

**NAME OF GRIEVANT'S IMMEDIATE SUPERVISOR**
Sylvia Corpuz

**CAMPUS / MEDICAL CENTER / LABORATORY**

**DEPARTMENT / DIVISION**
Nuclear Medicine

**WORK TELEPHONE**
N/A

**EMPLOYEE CLASSIFICATION TITLE**
Senior Nuclear MedTech

**NON-WORK ADDRESS TO WHICH CORRESPONDENCE MAY BE SENT TO GRIEVANT** 145 Lincoln, #4
~~1498 9th Ave~~ SF CA 94122

**EMPLOYEE EMPLOYMENT STATUS** X _ Career/Regular _ Probationary _ Full Time _ Casual/Temporary _ Per Diem _ Part Time (0.8)

**GRIEVANT'S NORMAL HOURS OF WORK** 730 AM - 230 PM

**IF REPRESENTED IN THIS GRIEVANCE, PROVIDE THE FOLLOWING:**

**REPRESENTATIVE'S NAME**
Nino Maida

**REPRESENTATIVE'S ORGANIZATION** UPTE-CWA

**REPRESENTATIVE'S TELEPHONE NUMBER** 415-412-8546

**REPRESENTATIVE'S NON-WORK ADDRESS, CITY, STATE, ZIP**
1498-9th Ave, SF CA 94122-3607

**TYPE OF GRIEVANCE:**
X INDIVIDUAL __ GROUP(LIST ALL GRIEVANTS)
__ UNION (MUST BE SIGNED BY THE PRESIDENT OR DESIGNEE)

**SPECIFIC ARTICLE(S) & SECTION(S) OF THE CONTRACT ALLEGED TO BE VIOLATED:**
33B, 6, 8

RECEIVED
AUG 29 2005
UCSF MEDICAL CE...
LABOR RELATIONS

**DATE OF ACTION CAUSING GRIEVANCE**
July 28, 2005

**DATE OF INFORMAL DISCUSSION WITH SUPERVISOR**
___/___/___

**DATE OF INFORMAL RESPONSE**
___/___/___

**ALLEGED VIOLATION OF AGREEMENT** TOTALLY DEFECTIVE "INTENT TO DISMISS" PROCESS; LACK OF JUST CAUSE AND LACK OF DUE PROCESS; REPRISAL FOR PARTICIPATING IN GRIEVANCE PROCEDURES (SEE ATTACHMENTS).

**REMEDY REQUESTED** MAKE WHOLE IN EVERY WAY. PROVIDE MANAGEMENT TRAINING TO SYLVIA CORPUZ. PROVIDE EFFECTIVE TRAINING FOR ALL EMPLOYEES AFFECTED BY THE NEW COMPUTER BASED, EMPLOYEE TIME SCHEDULING AND REPORTING SYSTEM. REINSTATE MR. O'Sullivan TO HIS JOB EFFECTIVE IMMEDIATELY.

**GRIEVANT'S AND/OR REPRESENTATIVE'S SIGNATURE**
Nino Maida

**DATE**
Aug 26, 2005

SEE:
[1 PAGE ATTACHMENT]

## PROOF OF SERVICE FORM

**PART 1:**     _Delivery by U.S. Mail_: Proof of Service by Mail.

I, Maurita Hysten, declare that I am over the age of eighteen years and not a party to the grievance.  My address is *300 Lakeside Drive, 12th Floor -- Oakland, CA 94612-3550*.  On November 16, 2005, I served the attached: response to Appeal to Step 3 for

*Grievance:  William O'Sullivan*
*Systemwide Number: SF-HX-48-05*
*Campus Number: MC-52-HX-05*

by placing a true copy enclosed in a sealed envelope with postage fully prepaid in the United States mail, addressed as follows:

Mr. Jelger Kalmijn, President
UPTE - CWA 9119
2510 Channing Way, Suite 11
Berkeley,  CA  94704

**PART 2:**     I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on November 16, 2005, at Oakland, California.

Signature

Maurita Hysten
Type or Print Name

IN ARBITRATION PROCEEDINGS PURSUANT TO THE
COLLECTIVE BARGAINING AGREEMENT BETWEEN THE PARTIES

| | |
|---|---|
| UNIVERSITY PROFESSIONAL AND<br>TECHNICAL EMPLOYEES, LOCAL 9119,<br><br>Union,<br>and<br><br>UNIVERSITY OF CALIFORNIA, SAN<br>FRANCISCO MEDICAL CENTER,<br><br>Employer.<br><br>Re: William O'Sullivan arbitrability | OPINION and DECISION<br><br>of<br><br>JOHN KAGEL<br>Arbitrator<br><br>September 1, 2006<br><br>Palo Alto, California |

APPEARANCES:

For the Union: Nino Maida, Representative, Kevin Rooney, President

For the Employer: Stephen J. Weglarz, Esq.

ISSUE:

The issue arises out of the following situation: William O'Sullivan was a Senior Nuclear Medical Technician at Mount Zion, part of UCSF. The last day he came to work prior to not reporting to work was July 22, 2005. He next reported to work on August 23, 2005.

1

EXHIBIT L

During that period he had received two letters at his home: The first, which bore no date, but was mailed on July 28, 2005, read:

> "Please be advised that it came to my attention that you have been absent from work beginning Monday, July 25, 2005 to the present. The Department does not have a record of any request from you for vacation or other leave of any type or for this time period. Further, there isn't any approval for this time off from your Manager. As I'm sure you are aware, your Manager must review and give prior approval for requests for all time off.
>
> The only reason the Department Manager is even aware of your absence is because your co-worker called the department seeking a replacement. He indicated that when you informed him of your intentions, he reminded you that you needed to receive prior approval from your Manager. As a result you have been on unauthorized and unapproved leave since Monday, July 25, 2005.
>
> UCSF Medical Center cannot and will not tolerate conduct of this type. Therefore, you are directed to report to work tomor'ow at your normally scheduled shift and time. If you fail to report to work, we will treat your action as job abandonment and will accept this as your resignation from the medical Center pursuant to Article 33, Sections B, C, D and B of the collective bargaining agreement between the University of California and UPTE." (Jt. Ex. 9)

He was sent a second letter on August 8, 2005:

> "A letter was sent to your house on Thursday, July 28, 2005 regarding your unapproved absence from the work place. The department did not receive a pre-approval request from you for vacation or other leave of any type. Therefore, there is no approval for this time off from your Manager. As you are aware and were informed, your Manager must review and give prior approval for requests for all time off.
>
> UCSF Medical Center cannot and will not tolerate conduct of this type. Since you have consistently failed to report to work at your normally scheduled shift and time since July 28, 2005 and prior thereto, your termination will be treated as a resignation from the Medical Center pursuant to Article 33, Sections B, C, D and E of

2

the collective bargaining agreement between the University of California and UPTE.

Resignation papers will be processed regarding your job abandonment from the UCSF Medical Center." (Jt. Ex. 10)

The Grievant had gone to New York as he had at the same time in years past for what he considered his vacation. A neighbor had collected his mail in his absence and the Grievant got the letters on his return the night before August 23.

The issue on the merits is that the Union would maintain on his behalf that he was on vacation during that period of time.

The issue in this case is whether that the issue neither grievable nor arbitrable under Article 33.B.3 of the Agreement.

AGREEMENT PROVISIONS:

## "ARTICLE 33
### RESIGNATION/JOB ABANDONMENT ...

**B. JOB ABANDONMENT**

Failure to report to work as scheduled for five (5) consecutive work days may be treated by the University as an employee's job abandonment resulting in her/his resignation:

1.    In the case of job abandonment, the University shall provide the employee with written notification of its intent to separate her/him. This notification shall include the reasons for the separation, the employee's right to respond to the University within fourteen (14) calendar days, and a Proof of Service. The notification shall be sent to the employee's last known mailing address.

3

2.    The employee shall have fourteen (14) calendar days from the mailing of such notice to respond to the University prior to her/his separation. The response may, at the option of the employee, be in writing or may be a meeting with a designated University official. The official must have the authority to effectively recommend reinstatement of the employee.

3.    Following the employee's timely response, or if no response was provided within fourteen (14) calendar days, the decision of the designated University official is not subject to the grievance and/or arbitration provisions of this Agreement."

## POSITION OF THE PARTIES:

### Position of the Employer:

That the Arbitrator lacks authority to modify the terms of the Agreement; that the Employer has preserved the issue of arbitrability in this case; that the discharge provision of the Agreement does not apply; that the Grievant failed to conform to the Department policies and standards which he had received and signed for; that Article 41.B of the Agreement requires prior approval for vacation; that job abandonment is handled under Article 33 and no other article; that it was the Grievant's obligation to secure the proper approvals; that the notices under Article 33 were proper.

### Position of the Union:

That the July 28 letter to the Grievant was sent before five consecutive missing work days as required by Article 33.B.5 and it is a letter of intent to dismiss; that there was no required notification of the right to respond within 14 days in that letter; that the notice of intent to separate of August 12 was sent before 15 days as is required by

4

Article 33; that the 15 days are required because of the Agreement requirement to provide for 14 days for the employee's response; that therefore the termination was defective and the case should go to arbitration.

DISCUSSION:

Notices:

The Grievant was absent from July 26 to August 22. The Union maintains that the University's notices to the Grievant were technically deficient. Its contention that the first notice asking him to report to work occurred before he missed five consecutive work days. The July 28 letter was a notification that the University wanted the Grievant to report to work or there would be consequences if he did not. He did not and he missed more than five consecutive work days, according to the Employer, as the beginning paragraph of Article 33.B provides for treatment by the Employer as job abandonment. The July 28 letter was not the notice required by Article 33.B.1.

That purported notice was the letter of August 8. It did not meet the requirements of Article 33.B.1 by failing to include a provision that the employee had the right to respond to the University within 14 calendar days as well as referring to non-existent provisions of the Agreement by referring to "Article 33, Sections ...C, D and E." (Jt. Ex. 10)

What Article 33.B.3 requires is that an employee has the right to respond before the determination of job abandonment is made. In this case the University did not

5

observe the requirement to allow for a response before declaring that the Grievant had abandoned his job. That declaration was in the letter that was mailed on August 9, 2005 (Jt. Ex. 10, p. 2) that as far as the Employer was concerned he had abandoned his job. It was a letter showing both the intent to consider him abandoning his job and the final decision that he did.

The response of the Grievant in this case was the grievance dated August 26 which was received on August 29. (Jt. Ex. 1)

The problem for the Union is that it agreed that the University's decision on job abandonment is not reviewable so that whether it considered him as having abandoned his job in either August or after receiving the grievance is not subject to the grievance and arbitration provisions of the Agreement under Article 33.B.3 so that the deficiencies in the notice in this case does not render that ultimate decision arbitrable once such a decision was made after a response.

The Employer had before it the response that the Grievant was on vacation including his claimed lack of training in a new time-reporting computer system and claimed reprisal for participating in grievance procedures. It was obliged to consider his response even if it was filed more than 14 days after the August 8 notice given its own deficiencies in that notice. But after receiving the response it reaffirmed its decision to consider the Grievant as abandoning his job. (See Jt. Ex. 6) That process cured the notice deficiencies. The Arbitrator, by the Agreement's language, cannot review that determination since he cannot ignore Article 33.B.3 as he would be required to do so.

6

(Jt. Ex. 1, Art. 3.G.1) Article 33 deals specifically with how issues of how employees missing work resulting in job abandonment is to be dealt with under the Agreement. If is therefor exclusive of Article 6 dealing with corrective action, discipline and discharge which deals with other job issues. The issues raised here must be decided in other forums than arbitration under the Agreement if any are available.


DECISION:

The determination that William O'Sullivan abandoned his job is not arbitrable under the Parties Collective Bargaining Agreement.

_____
Arbitrator

AUG-15-2007  17:36      FIRST LEGAL SF                              415 626 4138      P.02

ENDORSED
**F I L E D**
San Francisco County Superior Court

AUG 1 5 2007

GORDON PARK-LI, Clerk
BY: ____WESLEY RAMIREZ____
Deputy Clerk

1  MICHAEL A. LAURENSON (SBN: 190023)
   ADAM B. SUGARMAN (SBN: 234470)
2  GORDON & REES LLP
   Embarcadero Center West
3  275 Battery Street, Suite 2000
   San Francisco, CA 94111
4  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
5
6  Attorneys for Defendant
   THE REGENTS OF THE
   UNIVERSITY OF CALIFORNIA
7
8            SUPERIOR COURT OF CALIFORNIA
9            COUNTY OF SAN FRANCISCO
10
11 WILLIAM O'SULLIVAN,                )  CASE NO. CGC-07-465498
                                      )
12        Plaintiff and Petitioner,   )  **DEFENDANT THE REGENTS'**
                                      )  **ANSWER TO PLAINTIFF'S FIRST**
          vs.                         )  **AMENDED COMPLAINT**
13                                    )
   THE REGENTS OF THE UNIVERSITY OF   )
14 CALIFORNIA; Does I-XX,             )
                                      )
15        Defendant and Respondent.   )
                                      )
16                                       **FAXED**
17
18        Defendant THE REGENTS OF THE UNVIERSITY OF CALIFORNIA ("defendant")
19 hereby answers the First Amended Complaint filed by Plaintiff WILLIAM O'SULLIVAN
20 ("plaintiff") as follows:
21                       **GENERAL DENIAL**
22        Pursuant to California Code of Civil Procedure section 431.30(d), defendant generally
23 denies each and every allegation contained in plaintiff's First Amended Complaint, and each and
24 every alleged cause of action therein, and further deny that plaintiff sustained damages in the
25 amount alleged, or in any other amount or at all, by reason of any act, breach or omission on the
26 part of defendant, and further denies that plaintiff is entitled to any relief whatsoever from
27 defendant.
28 /   /   /

-1-

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT – CASE NO. CGC-07-465498

*(left margin, vertical)* Gordon & Rees LLP  Embarcadero Center West  275 Battery Street, Suite 2000  San Francisco, CA 94111

TOTAL P.02

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

**AFFIRMATIVE DEFENSES**

On information and belief, defendant alleges that the following affirmative defenses bar this action, in whole or in part:

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

Plaintiff is not entitled to relief on any of his causes of action because the First Amended Complaint, and each purported cause of action, fails to state a cause of action for which relief can be granted against defendant.

### SECOND AFFIRMATIVE DEFENSE

(Unclean Hands)

Plaintiff is not entitled to relief on any of his causes of action because he comes to this Court with unclean hands.

### THIRD AFFIRMATIVE DEFENSE

(Failure to Mitigate)

Plaintiff failed to mitigate and/or to attempt to mitigate his damages, if any, and therefore any recovery by plaintiff must be reduced or barred.

### FOURTH AFFIRMATIVE DEFENSE

(Statute of Limitations)

Plaintiff's Complaint and each of the purported causes of action set forth therein are barred by the applicable statutes of limitation, including, but not limited to, Code of Civil Procedure sections 337, 338, 339, 340, 343, 1084, 1094.5, and 1095.

### FIFTH AFFIRMATIVE DEFENSE

(Laches)

Plaintiff is not entitled to relief on any of his causes of action pursuant to the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

(Legitimate Business Necessity)

Plaintiff is not entitled to relief on any of his causes of action because defendant's actions

-2-

1    were reasonable in response to a legitimate business necessity, and were taken for legitimate,

2    non-discriminatory, non-retaliatory business reasons.

<div align="center">SEVENTH AFFIRMATIVE DEFENSE</div>

<div align="center">(Good Faith)</div>

5    Plaintiff is not entitled to relief on any of his causes of action because defendant's

6    conduct was at all times reasonable, in complete good faith, based upon good cause, and

7    undertaken pursuant to the terms of applicable laws and regulations.

<div align="center">EIGHTH AFFIRMATIVE DEFENSE</div>

<div align="center">(Exhaustion of Administrative Remedies)</div>

10    Plaintiff is not entitled to relief on any of his causes of action to the extent plaintiff failed

11    to timely and successfully exhaust his administrative remedies for the conduct alleged in the First

12    Amended Complaint.

<div align="center">NINTH AFFIRMATIVE DEFENSE</div>

<div align="center">(After Acquired Evidence)</div>

15    This answering defendant alleges that the First Amended Complaint and each cause of

16    action alleged therein is barred by the after-acquired evidence doctrine.

<div align="center">TENTH AFFIRMATIVE DEFENSE</div>

<div align="center">(Estoppel)</div>

19    This answering defendant alleges that plaintiff has ordered, approved and/or ratified

20    defendant's conduct, and is thus estopped from asserting any claims against defendant.

<div align="center">ELEVENTH AFFIRMATIVE DEFENSE</div>

<div align="center">(Avoidable Consequences)</div>

23    This answering defendant alleges that the damages alleged by plaintiff are barred by the

24    doctrine of avoidable consequences.

<div align="center">TWELFTH AFFIRMATIVE DEFENSE</div>

<div align="center">(Additional Affirmative Defenses)</div>

27    Defendant hereby gives notice that it intends to rely upon any additional affirmative

28    defense that becomes available or apparent during discovery and thus reserves the right to amend

<div style="text-align:left; writing-mode: vertical-rl;">Gordon & Rees LLP<br>Embarcadero Center West<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111</div>

1    its answer to assert such additional defenses as discovery proceeds.

2         WHEREFORE, Defendant requests that judgment be entered as follows:

3       1.   That Plaintiff take nothing by way of her Complaint;

4       2.   That judgment be entered in favor of Defendant;

5       3.   For costs of suit incurred in defense of this action;

6       4.   For recovery of attorneys' fees expended in the defense of this action; and

7       5.   For such other and further relief as the Court deems just and proper.

8    Dated: August ___, 2007           GORDON & REES LLP

9

10                      By: _____

11                        MICHAEL A. LAURENSON

                       Attorneys for Defendant

12                        THE REGENTS OF THE

                       UNIVERSITY OF CALIFORNIA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

UCR/1046827/5043557v.1

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT – CASE No. CGC-07-465498

PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On August 15, 2007, I served the within documents:

DEFENDANT THE REGENTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

> Louis A. Highman
> Bruce J. Highman
> Highman, Highman & Ball
> 870 Market St., Suite 467
> San Francisco, CA 94102
> Tel: (415) 982-5563
> Fax: (415) 982-5202

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 15, 2007, at San Francisco, California.

_Bob Lieberman_
Bob Lieberman

*William O'Sullivan v. The Regents of the University of California, et al.*
*Case No. CGC-07-465498*

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

UCR/1046827/5044107v.1